[No. A108690. First Dist., Div. Two. Mar. 8, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID McDONALD, Defendant and Appellant.

**COUNSEL**

Alan Siraco, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Amy Haddix and Ann P. Wathen, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**KLINE, P. J.**—This case presents the question whether it is a crime under California state law to urinate in public.

David McDonald challenges the denial of his motion to suppress evidence under Penal Code section 1538.5.[1] The evidence was seized after McDonald was detained for urinating in a public place. McDonald claims the detention and search incident thereto were unlawful because the Penal Code does not criminalize his act. As the officer who detained McDonald could lawfully do so only on the basis of a reasonable articulable suspicion McDonald was engaged in, or about to engage in, criminal activity, we are compelled to decide what appears to be a question of first impression—whether the California Legislature has criminalized public urination. We answer the question in the affirmative and shall therefore uphold the denial of McDonald's motion to suppress.

### FACTUAL AND PROCEDURAL BACKGROUND

Oakland Police Officer Francisco Rojas observed McDonald urinating in the parking lot of a restaurant in the 3000 block of San Pablo Avenue in Berkeley on Sunday, January 26, 2003, at 11:23 a.m. At the time, the restaurant was closed, and the parking lot was empty, save for a vehicle that appeared to belong to defendant's acquaintance. Officer Rojas, who was driving on the far side of San Pablo Avenue, could tell that McDonald was urinating, and Rojas saw McDonald zipping up his pants as the officer approached. Officer Rojas intended to cite McDonald for urinating in the parking lot, and asked him for identification. McDonald said he did not have an I.D. but provided his name, date of birth, and address. The officer placed McDonald under arrest while he verified this information. When he searched McDonald incident to the arrest, Officer Rojas found six "off-white rocks" in McDonald's pocket. After testing, one of the rocks was found to contain cocaine base, and the parties stipulated to this fact.

On March 3, 2004, McDonald filed a motion to suppress pursuant to section 1538.5, contending that he had been unlawfully detained because Officer Rojas lacked reasonable suspicion to believe McDonald was violating the law. The trial court heard the motion at a joint preliminary and suppression hearing on March 25, 2004. Officer Rojas stated that when he saw McDonald urinating in the parking lot, he intended to cite the defendant. After reviewing the police report of the incident, Rojas noted that it reflected his citation of McDonald for "littering" in violation of section 374.4, subdivision (b). The officer admitted

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

that might not have been the correct section of the Penal Code and did not recall "why [he] wrote that section" in his report.[2] When asked by defense counsel whether he was aware of a Penal Code section prohibiting public urination, Officer Rojas stated he did not "recall the [Oakland Municipal Code] section which would be for the City of Oakland, and we were in the [C]ity of Berkeley. That's why I used our [Oakland] code. That's the only reason I tried to look for another section. I thought of [Penal Code section] 314, indecent exposure, but that wasn't quite what I wanted."

The prosecutor argued that Officer Rojas had reasonable suspicion to detain and cite McDonald for littering in violation of sections 374 and 374.4, subdivisions (a) and (c). Accordingly, the prosecutor contended, Officer Rojas had the right to arrest McDonald and search him incident to the arrest because McDonald did not provide adequate identification. Defense counsel maintained that urine is not included in the definition of either "litter" or "waste matter," and consequently McDonald's act of public urination was not prohibited by section 374.4.

The court agreed with the prosecution. In his ruling, the judge defined the issue as "whether or not there is some law that will allow the arrest for a citation for urinating in public." The court concluded that, reading the definitions of "littering" and "waste matter" in sections 374 and 374.4 together, "urine would come within that description, and, therefore, the officer would have had the right to cite him for the littering section for the urination in public. . . . [¶] Having authority under my interpretation of these two statutes, 374.4 and 374 to cite Mr. McDonald for urinating in public under a littering statute, the officer then had the authority to arrest him for no I.D. because they certainly have to know who he is. [McDonald] could not provide I.D., and therefore under . . . [section] 853.5 et seq. and [section] 40302 of the Vehicle Code, the officer could, in fact, arrest Mr. McDonald, and having arrested him they would have the right to search him incident to arrest, and that's when the narcotics were found. So the Court's ruling is that the motion to suppress is denied."

On April 7, 2004, the Alameda County District Attorney filed an information charging McDonald with possession of a controlled substance (cocaine base) in violation of Health and Safety Code section 11350, subdivision (a). On July 26, 2004, defense counsel filed a motion pursuant to section 995 to set aside the information on the ground that the evidence supporting the charge had been obtained in violation of McDonald's Fourth Amendment rights. The

---

[2] It appears that Officer Rojas cited the wrong subdivision of this statute. As the prosecutor correctly noted at the hearing, subdivision (b) of section 374.4 prohibits private property owners from creating public health and safety hazards, public nuisances, or fire hazards on their own property. (§ 374.4, subd. (b).)

prosecution opposed the motion, reasserting its claim that McDonald was lawfully detained for littering under sections 374 and 374.4. The prosecution also contended that the officer properly detained McDonald for committing a public nuisance in violation of sections 370 and 372. In addition, the prosecution asserted, McDonald violated section 375, subdivision (a), which, generally speaking, prohibits the release of injurious or nauseous substances in places of public assembly. The prosecution maintained that Officer Rojas's objective belief that McDonald had violated the law was sufficient to justify detaining him even if the officer was unsure of the precise statute that had been violated.

The court denied McDonald's section 995 motion. After reviewing the statutory provisions upon which the People relied, the court acknowledged some difficulty in discerning precisely which provision of the Penal Code, if any, prohibited public urination. In the end, the court focused on the definitions of littering in sections 374, subdivision (a), and 374.4, subdivision (c), as well as the definition of "waste matter" in section 374, subdivision (b), explaining that "those are the code sections I'm looking at for the definition of what it is, that waste matter includes any nauseous or offensive matter of any kind." The court alluded to conditions at a local underpass, stating that "if urine isn't nauseating and offensive in those particular places, I don't know what would be."

The court concluded: "So, looking at this—and I'm looking at a different section, 374.4, because I don't know that that applies—but 375 talks about the deposit of any liquid; 375(a), which is nauseous, sickening, irritating or offensive to any of the senses, I think those statutes, that group of statutes all read together—and it may not be 374.4 exactly—but it certainly seems to me that those group of statutes, all carrying close enough together, certainly puts one on notice about what the issues are. It was fair to look at it as a whole. [¶] And I think the State of California does penalize urination in certain circumstances. And I know that the last time around, in the motion to suppress, I recall we had another analogy, I think it was mine, too: Running out on Skyline Trail someplace, miles from anywhere, that's in a public place, but it's not in a place such as it's going to be overly irritating, sickening or offensive to—nauseous or offensive to any of the senses. [¶] So, I think that there is some common sense exceptions to the rule. Where this occurred, I don't find that exception to be true. [¶] So, if you are correct, and this Court is limited to the strict language of 374.4, a lot of debate about whether that covers it or not. I know police departments have used it. And, on the other hand, if the Court can take a broader interpretation and look to see objectively whether the officer had probable cause, in that same family of sections, I think he did. [¶] So, based on that, I'm going to deny the motion."

On October 6, 2004, the parties agreed to submit the case to the court based upon the evidence presented at the preliminary hearing, and the court found McDonald guilty of the charged offense. On November 18, 2004, the court placed McDonald on formal probation for three years, a disposition it later modified to reflect McDonald's referral to a drug treatment program. McDonald filed a timely notice of appeal on December 3, 2004.

DISCUSSION

It is undisputed that Office Rojas detained McDonald because he saw him urinating in public. McDonald argues that his ·act cannot have provided Officer Rojas with reasonable articulable suspicion he was engaged in criminal activity because, under these circumstances, public urination is simply not a crime under California law. The parties agree, as do we, that the propriety of the search hinges upon whether public urination is a crime under the law of this state.

The People contend that California statutes prohibiting dumping, littering, or the release of injurious or nauseous substances in places of public assembly can be construed, either together or separately, to prohibit public urination. (See §§ 374.3, 374.4, 375.) They also contend that urinating in public is a "public nuisance." (§§ 370, 372.) We must therefore answer the "intriguing question" left open by the California Supreme Court in *People v. Smith* (1983) 34 Cal.3d 251, 271, footnote 11 [193 Cal.Rptr. 692, 667 P.2d 149], and decide whether public urination is prohibited by these statutes.[3]

■ We will affirm the denial of McDonald's motion to suppress on a ground advanced by the People in their opposition to McDonald's section 995 motion but not relied upon by the trial court. We conclude that the detention and search in this case were proper because Officer Rojas had a reasonable suspicion McDonald was committing a "public nuisance" within the meaning of section 370 by urinating in public in view of a busy street. As we will explain, McDonald's act falls within the ambit of this section and is the type of conduct courts have found to constitute a public nuisance.

A. *Standard and Scope of Review*

A criminal defendant is permitted to challenge the reasonableness of a search or seizure by making a motion to suppress at the preliminary hearing.

---

[3] On appeal, the People advance the argument that McDonald's act of urinating in public violated section 374.3's prohibitions on dumping and that it violated a number of Berkeley city ordinances. The People did not present these arguments below, and even if it were permissible to raise them for the first time on appeal, we need not reach the issues in light of our disposition. (See *People v. Smith, supra,* 34 Cal.3d at pp. 270–271.)

(*People v. Superior Court (Cooper)* (2003) 114 Cal.App.4th 713, 717 [7 Cal.Rptr.3d 862] (*Cooper*).) If the defendant is unsuccessful at the preliminary hearing, he or she may raise the search and seizure matter before the superior court under the standards governing a section 995 motion. (*Ibid.*, citing § 1538.5, subd. (m).) This is the course McDonald followed.

In a proceeding under section 995, the superior court's role is similar to that of an appellate court reviewing the sufficiency of the evidence to sustain a judgment. (*Cooper, supra,* 114 Cal.App.4th at p. 717, citing *Kohn v. Superior Court* (1966) 239 Cal.App.2d 428, 430 [48 Cal.Rptr. 832].) The superior court merely reviews the evidence; it does not substitute its judgment on the weight of the evidence nor does it resolve factual conflicts. (*Cooper,* at p. 717.) On appeal from a section 995 review of the denial of a defendant's motion to suppress, we review the determination of the magistrate at the preliminary hearing. (*Ibid.*; see *People v. Laiwa* (1983) 34 Cal.3d 711, 718 [195 Cal.Rptr. 503, 669 P.2d 1278], superseded by statute on another ground as stated in *People v. Trujillo* (1990) 217 Cal.App.3d 1219, 1223 [266 Cal.Rptr. 473] [on appeal from section 995 review of motion-to-suppress denial "the appellate court in effect disregards the ruling of the superior court and directly reviews the determination of the magistrate holding the defendant to answer"].) We must draw all presumptions in favor of the magistrate's factual determinations, and we must uphold the magistrate's express or implied findings if they are supported by substantial evidence. (*People v. Laiwa,* at p. 718; *People v. Ramsey* (1988) 203 Cal.App.3d 671, 679 [250 Cal.Rptr. 309].)

In determining whether the challenged search or seizure was reasonable under the Fourth Amendment, we review the magistrate's factual determinations under the substantial evidence standard. (*People v. Loewen* (1983) 35 Cal.3d 117, 123 [196 Cal.Rptr. 846, 672 P.2d 436].) We judge the legality of the search by "measur[ing] the facts, as found by the trier, against the constitutional standard of reasonableness." (*People v. Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621], superseded by statute on another ground as stated in *People v. Trujillo* (1990) 217 Cal.App.3d 1219, 1223 [266 Cal.Rptr. 473].) Thus, in determining whether the search or seizure was reasonable on the facts found by the magistrate, we exercise our independent judgment. (*People v. Glaser* (1995) 11 Cal.4th 354, 362 [45 Cal.Rptr.2d 425, 902 P.2d 729].)

We may sustain the trial court's *decision* without embracing its *reasoning*. Thus, we may affirm the superior court's ruling on McDonald's motion to suppress if the ruling is correct on any theory of the law applicable to the case, even if the ruling was made for an incorrect reason. (E.g., *People v. Smithey* (1999) 20 Cal.4th 936, 972 [86 Cal.Rptr.2d 243, 978 P.2d 1171].)

### B. *Fourth Amendment Principles*

█ A police officer may detain a person if the officer has a reasonable articulable suspicion that the detainee is or is about to be engaged in criminal activity. (*Terry v. Ohio* (1968) 392 U.S. 1, 21 [20 L.Ed.2d 889, 88 S.Ct. 1868].) To satisfy this requirement, the police officer must "point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231 [36 Cal.Rptr.2d 569, 885 P.2d 982].) The officer's suspicion must also be objectively reasonable; the facts must be such that any reasonable officer in the detaining officer's position would suspect the same criminal activity and the same involvement by the person in question. (*People v. Aldridge* (1984) 35 Cal.3d 473, 478 [198 Cal.Rptr. 538, 674 P.2d 240].) If the officer has such an objectively reasonable suspicion, a defendant's motion to suppress evidence seized in a search incident to the detention is properly denied. (*People v. Daugherty* (1996) 50 Cal.App.4th 275, 288–289 [57 Cal.Rptr.2d 666]; *People v. Conway* (1994) 25 Cal.App.4th 385, 390 [30 Cal.Rptr.2d 533].) Moreover, although Officer Rojas may have relied upon the wrong statute in detaining McDonald, we will not hold his actions unlawful "if there is a right statute that applies to the defendant's conduct." (*In re Justin K.* (2002) 98 Cal.App.4th 695, 700 [120 Cal.Rptr.2d 546].)

### C. *Public Urination Is Not "Littering" Under Section 374.4.*

At the preliminary hearing, the court held that Officer Rojas could properly detain McDonald because he had violated section 374.4's prohibition on littering. Reading sections 374 and 374.4 together, the court concluded that urine came within the definitions of "littering" and "waste matter" in those statutes. Similarly, at the section 995 hearing, the court concluded that urinating in public constituted littering under section 374.4 by reading that section in conjunction with the definitions of "littering" and "waste matter" in section 374. McDonald argues that the controlling definition of litter is that contained in section 374.4, subdivision (c), and that the trial court erred in applying the definitions used in section 374. We agree.

Section 374 sets out definitions of "littering" and "waste matter." "Littering" is defined in subdivision (a) as "the willful or negligent throwing, dropping, placing, depositing, or sweeping, or causing any such acts, of any waste matter on land or water in other than appropriate storage containers or areas designated for such purposes." (§ 374, subd. (a).) "Waste matter" is defined in subdivision (b) to mean "discarded, used, or leftover substance including, but not limited to, a lighted or nonlighted cigarette, cigar, match, or any flaming or glowing material, or any garbage, trash, refuse, paper, container, packaging or

construction material, carcass of a dead animal, *any nauseous or offensive matter of any kind,* or any object likely to injure any person or create a traffic hazard." (§ 374, subd. (b), italics added.)

Although "littering" is defined in section 374, subdivision (a), the legal prohibition against littering is set forth in section 374.4. Subdivision (a) of the latter section provides that "[i]t is unlawful to litter or cause to be littered in or upon any public or private property. Any person, firm, or corporation violating this section is guilty of an infraction." (§ 374.4, subd. (a).) Especially relevant to our analysis is subdivision (c) of section 374.4, which defines the term "litter" and provides that "[a]s used *in this section,* 'litter' means the discarding, dropping or scattering of small quantities of waste matter ordinarily carried on or about the person, including, but not limited to, beverage containers and closures, packaging, wrappers, wastepaper, newspapers, and magazines, in a place other than a place or container for the proper disposal thereof, and including waste matter which escapes or is allowed to escape from a container, receptacle, or package." (§ 374.4, subd. (c), italics added.)

■ In our view, the lower court erred in relying on the definition of "littering" and "waste matter" contained in section 374. As is evident from the language quoted in the previous paragraph, section 374.4, which makes littering a crime, contains its own specific definition of the term "litter." By its plain terms, the statute provides that it is the definition of "litter" contained in section 374.4, subdivision (c)—*not section 374*—that determines whether one is guilty of the conduct proscribed under section 374.4, subdivision (a). (§ 374.4, subd. (c) [defining the term "litter" "[a]s *used in this section*"].)[4] Where, as here, the Legislature has provided a specific definition of "litter" in section 374.4 itself, we are not at liberty to apply a different definition in determining whether McDonald has violated the statute. (See *Delaney v. Superior Court* (1990) 50 Cal.3d 785, 804 [268 Cal.Rptr. 753, 789 P.2d 934] ["It is bedrock law that if 'the law-maker gives us an express definition, we must take it as we find it . . . .' "], quoting *Bird v. Dennison* (1857) 7 Cal. 297, 307.) Because the applicable definition is set forth in section 374.4, subdivision (c), the fact that urine might qualify as "waste matter" under section 374, subdivision (b), has no bearing on our analysis. (See § 374, subd. (b) ["waste matter" includes "nauseous or offensive matter of any kind"].)

■ Having concluded that we are bound to apply the definition of "litter" set forth in section 374.4, subdivision (c), we are compelled to conclude that

---

[4] This interpretation does not render meaningless the definition of "littering" set forth in section 374, because that definition gives meaning to section 374.7, which prohibits littering or dumping of "waste matter" in waters or on shores, and which (unlike section 374.4) does not contain its own definition.

McDonald did not violate this section because, contrary to the People's contention, the passing of urine does not fall within the ambit of the statute. Urine is not a waste matter "ordinarily carried *on or about* the person." (§ 374.4, subd. (c), italics added.) Urine is carried *within* the person and thus is not embraced by the terms of this provision.[5]

■ Our reading of the statute is buttressed by the illustrative list of "waste matter" contained in subdivision (c) of section 374.4. The list describes objects that may be "carried on or about the person," such as wrappers, newspapers, and magazines. (§ 374.4, subd. (c).) Under the rule of statutory construction known as *ejusdem generis,* application of the general term is limited to things that are similar to those specifically enumerated. (*People v. Gordon* (2001) 90 Cal.App.4th 1409, 1412 [109 Cal.Rptr.2d 725].) And " '[i]n construing criminal statutes, the *ejusdem generis* rule of construction is applied with stringency.' " (*Ibid.,* quoting *People v. Thomas* (1945) 25 Cal.2d 880, 899 [156 P.2d 7].) Here, as McDonald correctly notes, the enumerated items all share the characteristic of portability, a characteristic that cannot be ascribed to urine. Moreover, unlike urine, which is the product of an organic or natural process, all of the listed items are manufactured products.

■ We therefore hold that McDonald's act of passing urine in public did not violate section 374.4. We now turn to the other statutory provisions upon which the People relied below to determine whether they prohibit public urination.

### D. *Urinating in Public Does Not Violate Section 375.*

At the hearing on McDonald's section 995 motion, the People also argued that McDonald had violated section 375. Subdivision (a) of that section makes it unlawful "to throw, drop, pour, deposit, release, discharge or expose, or to attempt to throw, drop, pour, deposit, release, discharge or expose in, upon or about any theater, restaurant, place of business, place of amusement or any place of public assemblage, any liquid, gaseous or solid substance or matter of any kind which is injurious to person or property, or is nauseous, sickening, irritating or offensive to any of the senses." The People contend that

---

[5] The common, ordinary meaning of the words "on" and "about" bears out our conclusion. One leading dictionary defines "on" as follows: "**1 a**—used as a function word to indicate position in contact with and supported by *the top surface of* <the book is lying ∼ the table> **b**—used as a function word to indicate position in or in contact with *an outer surface* <the fly landed ∼ the ceiling> <I have a ∼ cut my finger> <paint ∼ the wall> . . . ." (Webster's 10th New Collegiate Dict. (2001) p. 809, italics added.) The same dictionary defines "about" as "**1:** in a circle around: on every side of: AROUND **2 a**: in the immediate neighborhood of: NEAR **b**: on or near the person of . . . ." (*Id.* at p. 3.) It is apparent from these definitions that the phrase "waste matter ordinarily carried *on or about* the person" does not include a fluid necessarily carried *within* the human body.

McDonald violated this section by releasing or discharging urine, a "liquid . . . substance or matter . . . which . . . is nauseous, sickening, irritating or offensive to any of the senses." (§ 375, subd. (a).) We cannot agree.

While urine is "nauseous, sickening, irritating or offensive to . . . the senses," a reading of the entire statute compels the conclusion that it is not the type of substance targeted by section 375. Subdivision (b) of this section makes it unlawful to "manufacture or prepare, or to possess" any of the offensive substances the deposit, release, or discharge of which is prohibited by subdivision (a). (§ 375, subd. (b) ["It shall be unlawful to manufacture or prepare, or to possess any liquid, gaseous, or solid substance or matter of any kind which is injurious to person or property, or is nauseous, sickening, irritating or offensive, to any of the senses with intent to throw, drop, pour, deposit, release, discharge or expose the same in, upon or about any theater, restaurant, place of business, place of amusement, or any other place of public assemblage"].) It is evident that the substances targeted by this section, like those at which section 374.4 is aimed, are artificially created through some process of fabrication. Urine, a natural product of the human body, is not such a substance.

The few available cases applying section 375 support our reading of the statute. The Fifth District has noted that "[t]he evident legislative purpose of section 375 is to protect the public from willful use of toxic and nauseous substances which are injurious by prohibiting use in places where numbers of people gather." (*People v. DeLaCruz* (1993) 20 Cal.App.4th 955, 961 [25 Cal.Rptr.2d 202] [use of chemical Mace in self-defense].) Thus, the statute is intended to prevent the use in places of public assembly of manufactured or prepared substances that might be harmful to people or property. (See *People v. Black* (1941) 45 Cal.App.2d 87, 93 [113 P.2d 746] [throwing of acid into cleaning establishments and over garments prosecuted under § 375].)

As urine simply does not fall within the class of substances targeted by section 375, McDonald's detention cannot be upheld on the grounds he violated that statute. Having reached this conclusion, we turn to section 370, the remaining statute relied upon by the People in the court below.

E. *The Detention and Search of McDonald Were Proper Because McDonald Was Committing a Public Nuisance in Violation of Sections 370 and 372.*

1. *Public Nuisance Doctrine*

" 'A public or common nuisance . . . is a species of catch-all criminal offense, consisting of an interference with the rights of the community at

large . . . .' " (*People ex rel. Clancy v. Superior Court* (1985) 39 Cal.3d 740, 749 [218 Cal.Rptr. 24, 705 P.2d 347], quoting Prosser & Keeton, The Law of Torts (5th ed. 1984) § 86, p. 618 (Prosser & Keeton).) At common law, public nuisance covered a wide variety of such minor criminal infractions, "all of which involved some interference with the interests of the community at large-interests that were recognized as rights of the general public entitled to protection." (Rest.2d Torts, § 821B, com. b, p. 88.) It is this *community* aspect" that is a distinguishing feature of a public nuisance. (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1105 [60 Cal.Rptr.2d 277, 929 P.2d 596] (*Acuna*).) As the California Supreme Court explained in *Acuna*, "[t]he public nuisance doctrine is aimed at the protection and redress of *community* interests and, at least in theory, embodies a kind of collective ideal of civil life . . . ." (*Acuna*, at p. 1103.) This is in contrast to the law of private nuisances, which was "tied to and designed to vindicate individual ownership interests in *land*. . . ."[6] (*Ibid.*) Consequently, an act or condition may constitute a public nuisance even if it does not cause any loss of enjoyment in the use of private land. (2 Dobbs, The Law of Torts (Practitioner Treatise Series 2001) § 467, at p. 1335.) Viewed broadly, the public nuisance doctrine thus represents an effort to balance the rights of the individual with the interest of the community in " 'maintain[ing] a decent society.' " (*Acuna*, at p. 1102, quoting *Jacobellis v. Ohio* (1964) 378 U.S. 184, 199 [12 L.Ed.2d 793, 84 S.Ct. 1676].)

### 2. *The Statutory Definition of "Public Nuisance"*

The early common law categories of public nuisance have been codified in California since 1872 in Civil Code section 3479, which uses definitional language almost identical to that of section 370 of the Penal Code. (See Civ. Code, § 3479 ["nuisance" defined as "[a]nything which is injurious to health, . . . or is indecent or offensive to the senses, . . . so as to interfere with the comfortable enjoyment of life or property"]; see *In re Englebrecht* (1998) 67 Cal.App.4th 486, 492 [79 Cal.Rptr.2d 89] (*Englebrecht*) [noting similarity between definitions in § 370 and Civ. Code, § 3479].) Civil Code section 3480 further defines a "public nuisance" as "one which affects at the same time an

---

[6] The word "nuisance" is thus used to describe two distinctly different concepts, only one of which directly concerns us here. The concept of private nuisance does not confront us in this case. "A private nuisance is a civil wrong, based on a disturbance of rights in land." (Prosser & Keeton, *supra*, § 86, at p. 618.) As defined by the Restatement Second of Torts, "[a] private nuisance is a nontrespassory invasion of another's interest in the *private use and enjoyment of land*." (Rest.2d Torts, § 821D, italics added.) The concepts of public and private nuisance may be confused, because in certain circumstances, a private plaintiff may recover for a public nuisance. (See Rest.2d Torts, § 821C; see also Newark, *The Boundaries of Nuisance* (1949) 65 L.Q. Rev. 480, 482–483 [explaining how crime of public nuisance came to be confused with civil tort of private nuisance].)

entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal."

 Section 370 mirrors these civil provisions. (*Acuna, supra,* 14 Cal.4th at p. 1104.) It provides in pertinent part: "Anything which is injurious to health, or is indecent, or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property by an entire community or neighborhood, or by any considerable number of persons . . . is a public nuisance." (§ 370.)[7] The California Supreme Court analyzed the language of section 370 in *People ex rel. Busch v. Projection Room Theater* (1976) 17 Cal.3d 42 [130 Cal.Rptr. 328, 550 P.2d 600] (*Projection Room Theater*). There, the court explained that "the proscribed act may be anything which alternatively is injurious to health or is indecent, or offensive to the senses; the results of the act must interfere with the comfortable enjoyment of life or property; and those affected by the act may be an entire neighborhood or a considerable number of persons . . . ." (*Id.* at p. 49, italics omitted.) From this, it is apparent that in determining whether a particular activity constitutes a public nuisance, a court considers three elements: (1) the proscribed act, (2) whether the result of the act interferes with the comfortable enjoyment of life or property, and (3) whether the act affects a sufficient number of persons. We review these elements in turn.

a. *The Proscribed Act*

 With respect to the first element, the California Supreme Court has recently made clear that under section 370 the "proscribed act" may be considered a public nuisance if it is *either* injurious to health *or* indecent *or* offensive to the senses. (*Acuna, supra,* 14 Cal.4th at p. 1104, citing *Projection Room Theater, supra,* 17 Cal.3d at p. 49.) Applying these criteria to the facts before us, we have no trouble concluding that McDonald's act was "injurious to health or . . . indecent, or offensive to the senses" as required by statute. (*Projection Room Theater,* at p. 49.)

Because these criteria are stated in the disjunctive, the act of public urination need satisfy only one of them to be considered an offense (a "proscribed act") under section 370. We believe, however, that public urination satisfies all three criteria. First, allowing individuals to urinate in public endangers the public health. As the Court of Appeals of Washington noted in *State v. Villarreal* (1999) 97 Wn.App. 636, 643 [984 P.2d 1064, 1068], another case involving public urination, "the safety and health of the public at

---

[7] A person maintaining or committing a public nuisance is guilty of a misdemeanor. (§ 372.)

large is endangered by the improper disposal of human waste in a public place as described in these facts."[8]

Second, urinating in public is also "indecent" as that term is used in section 370. A common dictionary definition of the word "indecent" is "grossly unseemly or offensive to manners or morals." (Webster's 10th New Collegiate Dict., *supra*, at p. 589.) As the Supreme Court of the United States has noted, " '[t]here are few activities in our society more personal or private than the passing of urine. Most people describe it by euphemisms if they talk about it at all. It is a function traditionally performed without public observation; indeed, its performance in public is generally prohibited by law as well as social custom.' " (*Skinner v. Railway Labor Executives' Assn.* (1989) 489 U.S. 602, 617 [103 L.Ed.2d 639, 109 S.Ct. 1402], quoting *National Treasury Employees Union v. Von Raab* (5th Cir. 1987) 816 F.2d 170, 175.) The performance of such a traditionally private act in public is certainly "indecent."

Third, urinating in public is also "offensive to the senses." As the superior court recognized at the hearing on McDonald's section 995 motion, urine is "nauseating and offensive" when excreted in public places. (See also *People v. Cooke* (1991) 152 Misc.2d 311, 315 [578 N.Y.S.2d 76, 78–79] [concluding that public urination is "offensive to the sense of sight and can also be offensive to the sense of smell"].) Indeed, behavior that would arguably be less offensive to the senses than public urination nevertheless constitutes a public nuisance under California law. (See *People v. Montoya* (1933) 137 Cal.App. Supp. 784, 786 [137 Cal.App. 784, 28 P.2d 101] [noting that owner of a beer hall could properly be convicted of maintaining a public nuisance if drunken crowds within beer hall used offensive language that reached passersby or neighborhood residents]; accord, Prosser & Keeton, *supra*, § 90, p. 644 ["public profanity" constitutes a public nuisance].) There can be little doubt that public urination amply satisfies the "offensive to the senses" criterion of section 370.

We therefore conclude that public urination falls within the type of conduct prohibited by section 370 because it is "injurious to health, or is indecent, or offensive to the senses." (*Projection Room Theater, supra,* 17 Cal.3d at p. 49.) McDonald's act of public urination is thus the type of "proscribed act" described in section 370.

---

[8] In *State v. Villarreal,* the defendant was observed urinating against a building at 10:00 o'clock in the evening. (*State v. Villarreal, supra,* 97 Wn.App. at pp. 638–639 [984 P.2d at p. 1066].)

### b. *The Resulting Interference*

 The results of the proscribed act must interfere with the comfortable enjoyment of life or property. (*Projection Room Theater, supra,* 17 Cal.3d at p. 49.) But it is not necessary that the interference be especially great. Indeed, "[t]he common law recognized various types of wrongful activity as indictable public nuisances, including such miscellaneous acts as eavesdropping, being a common scold and maintaining for hire a place of amusement which served no useful purpose." (*People v. Lim* (1941) 18 Cal.2d 872, 877 [118 P.2d 472].) Such modest restrictions on personal freedom to engage in certain activities are a necessity in a complex and highly organized society such as ours, in which citizens often live, travel, and work with one another in close quarters. As has been pointed out by our Supreme Court and that of the United States, " '[t]he very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests.' " (*Acuna, supra,* 14 Cal.4th at p. 1102, quoting *Wisconsin v. Yoder* (1972) 406 U.S. 205, 215–216 [32 L.Ed.2d 15, 92 S.Ct. 1526].) "The state has not only a right to 'maintain a decent society,' . . . but an obligation to do so." (*Acuna,* at p. 1102, quoting *Jacobellis v. Ohio, supra,* 378 U.S. 184, 199.)

Viewed in this context, there can be little doubt that urination on or near a busy commercial street interferes with the comfortable enjoyment of both life and property. The sight and smell of urine are vile and offensive, and those who use the public streets and sidewalks cannot be freely subjected to such unpleasantness. (Prosser & Keeton, *supra,* § 90, pp. 644–645 [public nuisance is "a condition which makes travel unsafe or highly disagreeable"].)

 Citing *Acuna,* McDonald contends that his act of urinating in public cannot satisfy the definition of public nuisance because it was neither a "substantial" nor "unreasonable" interference with "collective social interests." (See *Acuna, supra,* 14 Cal.4th at p. 1105.) McDonald relies on the statement in *Acuna* that public nuisances are enjoinable only if the interference with collective social interests is "both *substantial* and *unreasonable.*" (*Ibid.*) He misreads *Acuna.* That opinion dealt not with the criminal prosecution of a public nuisance but with an action brought pursuant to two *civil* statutes—Code of Civil Procedure section 731 and Civil Code section 3480. (*Acuna,* at p. 1100.) The *Acuna* court was thus concerned with determining whether the superior court had properly exercised its *equitable* jurisdiction to enjoin a public nuisance. (*Id.* at pp. 1101, 1106–1109.) The Supreme Court therefore looked to the Restatement Second of Torts for guidance in defining what constitutes a "substantial" and "unreasonable" interference with rights common to the public. (*Id.* at p. 1105, citing Rest.2d Torts, §§ 821F, coms. c & d, pp. 105–106, 826–831.) As *Acuna* explains, "[t]he

Restatement Second formulates the requirement of substantiality as proof of 'significant harm . . . .' " (*Acuna*, at p. 1105.) But section 821F of the Restatement, which defines "significant harm," makes clear that the substantiality or significant harm requirement "applies *only* to tort liability in an action for damages. *A public nuisance may be prosecuted criminally although it has not yet resulted in any significant harm, or indeed any harm to anyone.*" (Rest.2d Torts, § 821F, com. b, p. 105, italics added.)

 And while the element of unreasonableness commonly applies to criminal public nuisances, it requires only that the "utility [of the offending conduct] is outweighed by the gravity of the interference with the public right." (Rest.2d Torts, § 826, com. a, pp. 119–120.) McDonald advances no argument that there is any "utility" to the act of urinating in public, and as we shall explain, public urination involves an interference with the public's right to a "decent society" and to the use of the streets. We conclude that " ' "reasonable persons generally, looking at the whole situation impartially and objectively, would consider it unreasonable" ' " to urinate in public just off a busy street. (*Acuna, supra,* 14 Cal.4th at p. 1105, quoting Rest.2d Torts, § 826, com. c, p. 121.)

McDonald's contention that *his* conduct, which took place in the empty parking lot of a closed restaurant, did not significantly interfere with the public's enjoyment of life and property frames the issue much too narrowly. We are asked to interpret the meaning of a statute of general applicability. If we were to conclude that McDonald's act of public urination is permissible under section 370, we would in effect be holding that the statute does not prohibit any such act. We believe we may take judicial notice of the unpleasant consequences that would follow from permitting individuals to urinate in public at will. (Evid. Code, § 451, subd. (f); *id.* § 452, subd. (g); *Marshall v. Standard Oil Co.* (1936) 17 Cal.App.2d 19, 29 [61 P.2d 520] [court may take judicial notice of fact that erection of derricks and drilling of oil wells in public street constitutes public nuisance].) We will not adopt an interpretation of section 370 that would allow for such a result. (See *People v. Smith* (2004) 32 Cal.4th 792, 798 [11 Cal.Rptr.3d 290, 86 P.3d 348] [court may consider both impact of interpretation on public policy and consequences that will flow from a particular interpretation].)

We acknowledge that there might well be circumstances in which a single, discreet act of public urination would not violate sections 370 and 372. Thus, for example, a hiker responding to an irrepressible call of nature in an isolated area in the backwoods cannot reasonably be seen as interfering with any right common to the public. (Cf. *U.S. v. Whitmore* (E.D.Mich. 2004) 314 F.Supp.2d 690, 698–699 [defendant's act of urinating in a secluded area of a national forest at night was not within statute proscribing indecent exposure and thus

did not justify officer's stop].) It suffices to say that such facts are not before us, as we are here confronted with an act of urination near a busy street.

### c. *Those Affected by the Proscribed Act*

Section 370 declares an activity to be a public nuisance if it "interfere[s] with the comfortable enjoyment of life or property . . . by any considerable number of persons." This does not mean, however, that those affected must always be percipient witnesses to the nuisance activity. The law of public nuisances permits the state to regulate nuisance activities even if those activities are carried out in private before individuals who are not personally offended by them. Thus, in *Projection Room Theater,* the California Supreme Court explained that "[t]he fact that obscene or other indecent exhibitions take place behind closed doors and are viewed only by those who choose to view them does not defeat the community's interest in regulating such exhibitions." (*Projection Room Theater, supra,* 17 Cal.3d at p. 51.)

In any event, in this case it is undisputed that McDonald's act took place on a busy commercial street in a populated area. Officer Rojas testified that he was driving down San Pablo Avenue and was approximately 30 feet away from McDonald when he observed him urinating. Rojas explained that McDonald was standing only 10 to 15 feet from the street. We believe the bodily discharge of urine in such a public place is sufficient to interfere with the comfortable enjoyment of life or property by a considerable number of persons.

We therefore conclude that McDonald's act of urinating in public satisfies the statutory definition of "public nuisance" as elucidated in California case law.

### 3. *The Fact That the Legislature Has Criminalized Public Urination in Certain Circumstances Does Not Preclude a Finding of Public Nuisance.*

McDonald contends that public urination cannot be a crime under any of the statutes upon which the People rely because the Legislature has specifically criminalized public urination in other contexts. McDonald correctly points out that section 640, subdivision (b)(8), makes it an infraction to urinate in any public transportation vehicle or facility. (§ 640, subd. (b)(8).) According to McDonald, the Legislature's specific prohibition of public urination in public transportation vehicles and facilities permits an inference that the Legislature has not criminalized public urination in other contexts.

Review of other provisions of the Penal Code makes the flaw in this line of reasoning readily apparent. In other sections of the Penal Code, the Legislature has declared that specific activities constitute public nuisances. (See

§ 186.22a [places used by criminal street gangs]; § 369h [installation or maintenance of misleading signs or lights along railroad tracks]; § 556.3 [placing signs, pictures, or advertisements on public property]; § 11225, subd. (a) [use of place for illegal gambling].) If we were to follow McDonald's argument to its logical conclusion, the nuisances specified in the cited sections would be the *only* activities that could be prosecuted as public nuisances and sections 370 and 372 would effectively become superfluous. We believe the proper interpretation is that prosecution under these two sections would be impermissible only "if there were a more specific nuisance statute addressing appellant's conduct . . . ." (*People v. Jones* (1988) 205 Cal.App.3d Supp. 1, 8 [252 Cal.Rptr. 216].)

### 4. Other Courts Have Upheld Orders Enjoining Public Urination as a Public Nuisance.

We note in conclusion that in two recent reported public nuisance cases, California courts have upheld injunctions prohibiting urinating in public. Though in neither case did the courts consider whether public urination constituted a public nuisance, we nevertheless believe these cases provide support for our construction of the statute.

First, in *Acuna,* the California Supreme Court affirmed an injunction against members of a criminal street gang. (*Acuna, supra,* 14 Cal.4th at pp. 1125–1126.) One of the provisions of the injunction prohibited the gang members from "[u]rinating or defecating in any public place or place open to public view." (*Id.* at p. 1136, fn. 3 (dis. opn. of Mosk, J.) [quoting terms of injunction].) The majority in *Acuna* did not discuss the injunction's ban on public urination (*id.* at p. 1126), but Justice Mosk, while dissenting from the majority's holding, noted his agreement with the Court of Appeal that many of the injunction's provisions, including its prohibition on public urination, should be sustained, because "[t]he activities . . . readily fall within the statutory definition of a 'nuisance.' " (*Id.* at p. 1141 (dis. opn. of Mosk, J.).) The Fourth District Court of Appeal upheld a similar injunction against gang activities in *Englebrecht.* (*Englebrecht, supra,* 67 Cal.App.4th at p. 499.) There, too, the injunction contained a provision prohibiting the defendants from "[u]rinating or defecating in any public place open to public view." (*Id.* at p. 490, fn. 3.) Prohibiting public urination as a public nuisance is therefore not unprecedented.

### DISPOSITION

The judgment is affirmed.

Haerle, J., and Ruvolo, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied June 21, 2006, S142630.

---

*Presiding Justice of the Court of Appeal, First Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.