Filed 1/8/15  P. v. Saldana CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C074302 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF111630) |
| v. | |
| SILVERIO SALDANA, | |
| Defendant and Appellant. | |

A felony complaint was brought against defendant Silverio Saldana charging him with possession of methamphetamine for sale.  At the preliminary examination, the magistrate denied defendant's motion to suppress.  The Yolo County District Attorney then filed an information on this charge, and defendant moved unsuccessfully to set aside the information.  On appeal, defendant challenges the denial of the motion to suppress, arguing that methamphetamine seized from his pocket was obtained as a result of a search in violation of the Fourth Amendment.  We affirm.

1

BACKGROUND

A

*Motion To Suppress And Preliminary Examination*

Defendant filed a motion to suppress evidence pursuant to Penal Code[1] section 1538.5. The motion was heard before a magistrate in conjunction with the preliminary examination. The prosecution presented the following evidence.

Around 10:00 p.m. on April 2, 2011, West Sacramento Police Officer Matthew Boudinot was on patrol on West Capitol Avenue. He saw defendant standing alone in front of a motel. As far as Officer Boudinot could tell, defendant was "basically lingering, loitering in the area."

Officer Boudinot parked his patrol car on West Capitol Avenue, approximately 40 to 50 feet from defendant. He did not activate his emergency lights or shine a spotlight on defendant.

Officer Boudinot walked toward defendant. When Officer Boudinot was approximately 20 feet away, defendant looked in his direction, turned, and began walking in the opposite direction.

At the hearing on the motion to suppress, Officer Boudinot testified that he could not recall exactly what he said to defendant, but believed he asked, "Can I talk to you?" Officer Boudinot acknowledged that he "projected [his] voice" in order to be heard.

Defendant stopped and turned to face Officer Boudinot. Officer Boudinot and defendant then engaged in a "basic conversation" during which Officer Boudinot asked defendant questions along the lines of "What's going on?" and "What are you doing tonight?" Officer Boudinot did not get in defendant's way or touch him. He did not draw his service weapon.

---

[1] Undesignated statutory references are to the Penal Code.

Officer Boudinot asked defendant whether he was on probation or parole. Defendant responded that he was on parole.

Officer Boudinot and defendant continued to talk while waiting for dispatch to confirm defendant's parole status. During the course of their conversation, Officer Boudinot noticed that defendant appeared "anxious, nervous." Defendant repeatedly put his hands in his pants pockets, despite Officer Boudinot's request that he refrain from doing so. Around this time, a backup officer arrived to assist Officer Boudinot.

Dispatch confirmed defendant's parole status and Officer Boudinot asked defendant if he had anything illegal on him. Defendant responded that he had a scale in his pocket. Officer Boudinot then conducted a patdown search of defendant. During the search, Officer Boudinot found the scale and a cigarette package containing five baggies. The baggies contained a crystalline substance, which was later confirmed to be methamphetamine.

After receiving *Miranda*[2] warnings, defendant told Officer Boudinot that he was trying to make money to support his four-year-old daughter.

Defendant testified briefly at the hearing. Defendant testified that Officer Boudinot made contact with him by saying, "hey, you, come here."

Officer Boudinot emphatically denied that he ordered defendant to "come here," noting that to do so would be to "create an illegal detention." Although he could not remember exactly what he said, Officer Boudinot insisted that, "However I worded it, it was an absolute question when I spoke to him whether it be, what's going on? Or, can I talk to you? Whatever those specific words were, it was a question."

The magistrate then stated: "Okay. The Court has heard the evidence here. I've also had a chance to read the motion from [defense counsel] on behalf of his client and

---

[2]      *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694].

the response from [the prosecutor] on behalf of the People. [¶] I do find that the nature of the contact and the great credibility of the evidence suggests a consensual encounter in front of the motel. Officer Boudinot has testified though he could not recall the specific words, it was in the inquiry of, what are you doing, or words to that effect, and not as the defendant would suggest. And I think the weight of the evidence suggests that inquiry, the contact was consensual. And as a result of his observations, he found out that the defendant was on parole and was therefore searchable. [¶] I do find that the motion to suppress, therefore, will be denied in light of the consensual nature of the encounter. [¶] In the Court's view, this was not a detention."

Accordingly, the motion was denied and defendant was held to answer.

B

*Motion To Set Aside Information*

An information was filed charging defendant with possession of a controlled substance for sale and adding the sentencing enhancements. Defendant filed a motion to set aside the information under section 995. The trial court denied the motion.

C

*Jury Trial And Sentence*

A jury found defendant guilty of possession of a controlled substance for sale. After a bifurcated bench trial, the trial court found true the allegations that defendant had previously been convicted of two or more serious felonies and served four prior prison terms. Defendant was sentenced to an indeterminate term of 25 years to life pursuant to the three strikes law.

Defendant filed a timely notice of appeal.

DISCUSSION

Defendant contends that the trial court erred when it denied his motion to suppress evidence. Defendant contends that the initial contact between him and Officer Boudinot constituted an unlawful detention that was unsupported by reasonable suspicion. The

4

People contend that the encounter was consensual and therefore did not implicate Fourth Amendment principles. We agree with the People.

A

*Standard And Scope Of Review*

"A criminal defendant is permitted to challenge the reasonableness of a search or seizure by making a motion to suppress at the preliminary hearing. [Citation.] If the defendant is unsuccessful at the preliminary hearing, he or she may raise the search and seizure matter before the superior court under the standards governing a section 995 motion." (*People v. McDonald* (2006) 137 Cal.App.4th 521, 528-529.)

"In a proceeding under section 995, the superior court's role is similar to that of an appellate court reviewing the sufficiency of the evidence to sustain a judgment. [Citations.] The superior court merely reviews the evidence; it does not substitute its judgment on the weight of the evidence nor does it resolve factual conflicts. [Citation.] On appeal from a section 995 review of the denial of a defendant's motion to suppress, we review the determination of the magistrate at the preliminary hearing. [Citations.] We must draw all presumptions in favor of the magistrate's factual determinations, and we must uphold the magistrate's express or implied findings if they are supported by substantial evidence." (*People v. McDonald*, *supra*, 137 Cal.App.4th at p. 529.)

"We judge the legality of the search by 'mesasur[ing] the facts, as found by the trier, against the constitutional standard of reasonableness.' [Citations.] Thus, in determining whether the search or seizure was reasonable on the facts found by the magistrate, we exercise our independent judgment." (*People v. McDonald*, *supra*, 137 Cal.App.4th at p. 529.)

B

*Fourth Amendment Principles*

A police officer may approach an individual in a public place and ask questions without implicating the Fourth Amendment. "The United States Supreme Court has

5

made it clear that a detention does not occur when a police officer merely approaches an individual on the street and asks a few questions. [Citation.] As long as a reasonable person would feel free to disregard the police and go about his or her business, the encounter is consensual and no reasonable suspicion is required on the part of the officer. Only when the officer, by means of physical force or show of authority, in some manner restrains the individual's liberty, does a seizure occur." (*In re Manuel G.* (1997) 16 Cal.4th 805, 821.)

There is no bright-line rule for determining if an encounter is consensual. (*Ohio v. Robinette* (1996) 519 U.S. 33, 39 [136 L.Ed.2d 347, 354].) "[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." (*Florida v. Bostick* (1991) 501 U.S. 429, 439 [115 L.Ed.2d 389, 401-402].) Whether a person would have believed that he was free to leave is to be evaluated in light of the totality of the circumstances, rather than emphasizing particular details of that conduct in isolation. (*Michigan v. Chesternut* (1988) 486 U.S. 567, 573-574 [100 L.Ed.2d 571-572].)

Factors that might indicate an unlawful detention has taken place include: (1) the presence of several police officers; (2) an officer's display of a weapon; (3) some physical touching of the person; (4) the use of language or a tone of voice indicating that compliance with the officer's request might be compelled. (*United States v. Mendenhall* (1980) 446 U.S. 544, 554-555 [64 L.Ed.2d 497, 509].) "The officer's uncommunicated state of mind and the individual citizen's subjective belief are irrelevant in assessing whether a seizure triggering Fourth Amendment scrutiny has occurred." (*In re Manuel G.*, *supra*, 16 Cal.4th at p. 821; see also *Mendenhall*, at p. 554 [64 L.Ed.2d at p. 509].)

6

C

*Defendant Was Not Detained*

Applying the foregoing principles, we conclude the magistrate properly denied defendant's motion to suppress because the contact between Officer Boudinot and defendant was consensual in nature. Officer Boudinot was on routine patrol when he saw defendant standing in front of a motel. Officer Boudinot parked his patrol car approximately 40 to 50 feet away from defendant and walked toward him. Officer Boudinot was alone. There is nothing in the record to suggest that Officer Boudinot approached defendant in a confrontational or coercive manner. Officer Boudinot did not activate his patrol car's emergency lights or shine a spotlight on defendant.

Although defendant started to walk away from Officer Boudinot, he voluntarily turned around in response to Officer Boudinot's questions. There is nothing in the record to suggest that defendant could not have kept walking, had he chosen to do so. Officer Boudinot did not block defendant's path, chase after him, restrain him, or command him to do anything. Officer Boudinot merely walked toward defendant asking, "Can I talk to you?" or "What's going on?" from a distance of approximately 20 feet. Although Officer Boudinot "projected [his] voice," there is no evidence that he used a coercive tone of voice or language. (*In re Manuel G.*, *supra*, 16 Cal.4th at p. 821.) To the contrary, the record suggests that the overall tone of the encounter was low-key and conversational.

Defendant relies on *People v. Garry* (2007) 156 Cal.App.4th 1100, for the proposition that no reasonable person in his position would have felt free to leave. *Garry* is distinguishable. In *Garry*, an officer patrolling late at night in a high-crime area observed the defendant, Garry, standing on a corner. (*Id.* at pp. 1103-1104.) The officer turned the patrol car's spotlight directly on Garry, exited his car, and walked " 'briskly' " towards him, covering a distance of about 35 feet in two and a half seconds, while asking Garry to confirm his parole status and disregarding Garry's assertion that he was merely standing outside his home. (*Id.* at p. 1104.) After learning that Garry was on parole, the

7

officer decided to detain him.  (*Ibid.*)  When Garry resisted detention, the officer arrested him and discovered cocaine in a search incident to arrest.  (*Ibid.*)

The Court of Appeal for the First Appellate District concluded that an unlawful detention had occurred because the officer's actions, "taken as a whole, would be very intimidating to any reasonable person" and that "only one conclusion is possible from this undisputed evidence:  that [the officer]'s actions constituted a show of authority so intimidating as to communicate to any reasonable person that he or she was ' "not free to decline [his] requests or otherwise terminate the encounter." ' "  (*People v. Garry*, *supra*, 156 Cal.App.4th at pp. 1111, 1112.)

Here, Officer Boudinot approached defendant in a far more casual manner, without the use of a spotlight.  He did not approach defendant rapidly or immediately question him about his probation status.  He merely walked toward defendant asking, "Can I talk to you?" or "What's going on?"  On this record, we conclude that Officer Boudinot's actions did not constitute a show of authority so intimidating as to communicate to a reasonable person that he or she was not free to decline his requests or otherwise terminate the encounter.  Furthermore, though defendant initially turned to walk away, he voluntarily turned back in response to Officer Boudinot's questions, thereby indicating his consent.

We therefore conclude that the encounter was consensual, and as such, no showing of reasonable suspicion was required.  "[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions."  (*Florida v. Royer* (1983) 460 U.S. 491, 497 [75 L.Ed.2d 229, 236].)

After defendant admitted his parole status, Officer Boudinot was entitled to search him without a particularized suspicion.  (*People v. Smith* (2009) 172 Cal.App.4th 1354,

8

1361.)  Thus, Officer Boudinot's subsequent search was permissible, and defendant's motion to suppress the evidence obtained during that search was properly denied.

DISPOSITION

The judgment is affirmed.


      ROBIE      , J.


We concur:


      RAYE      , P. J.


      DUARTE      , J.