[No. D030992. Fourth Dist., Div. One. Oct. 26, 1998.]

In re DAVID A. ENGLEBRECHT, JR., on Habeas Corpus.

## COUNSEL

Steven J. Carroll, Public Defender, and DawnElla Gilzean, Deputy Public Defender, for Petitioner.

Paul J. Pfingst, District Attorney, Thomas F. McArdle and Anthony Lovett, Deputy District Attorneys, for Respondent.

## OPINION

**HALLER, J.**—In this proceeding, we are asked to decide the constitutionality of two provisions of a preliminary injunction, which prohibit:

—"Standing, sitting, walking, driving, bicycling, gathering or appearing anywhere in public view with any other defendant herein, or with any other known Posole [gang] member," and

—"Using or possessing pagers or beepers in any public place."

We find the nonassociation provision is constitutional, but the restriction on pagers and beepers is not.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 24, 1997, the district attorney filed a complaint for a temporary restraining order and permanent injunction to abate a public nuisance. The complaint alleged that members of the street gang known as Varrio Posole Locos or Posole had created a public nuisance by engaging in illegal activity and terrorizing residents within the "Target Area"—roughly a one-square mile area in Oceanside commonly referred to as "Eastside."[1] The complaint named 28 individuals, including Englebrecht, and 50 Does as defendants.

In alleging the Posole gang members have created a public nuisance, the complaint stated gang members regularly commit violent crimes, such as murders, shootings, assaults and batteries, robberies, and also use and sell illegal drugs within the Target Area. Other nuisance activities include: the playing of loud music, which disturbs the peace and quiet of the Target Area; congregating in large groups, which blocks the free passage of persons and interferes with the free use of property; applying graffiti, which adds to the blight of the Target Area; and repeatedly and continually committing trespass upon private property to conduct their illegal and harassing activities. In short, the complaint alleged: "Defendants regularly annoy, harass, intimidate, and confront the residents of the Target Area by their activities and cause the residents of the Target Area to fear for their property, their safety and their lives."[2]

---

[1]The Target Area encompasses a six-block by ten-block neighborhood and a park. The boundaries of the Target Area are Interstate 5 to the west; the 1400, 1500 and 1600 blocks of Mission Avenue to the south; the 200 block of Canyon Drive to the east; and State Route 76 to the north.

[2]In addition to declarations by law enforcement officials in support of the preliminary injunction, the district attorney filed under seal declarations by 13 individuals, including residents and people who work in the Target Area, outlining in graphic detail the fear they experience because of the Posole gang members' activities.

On December 11, 1997, the superior court issued a preliminary injunction against the defendants.[3]

On February, 13, 1998, Detective Ruben Sandoval of the Oceanside Police Department gang unit saw Englebrecht and his young son standing

[3]The preliminary injunction enjoined the defendants from the following conduct in the Target Area:

"(a) Standing, sitting, walking, driving, bicycling, gathering or appearing anywhere in public view with any other defendant herein, or with any other known Posole member;

"(b) Drinking alcoholic beverages, being under the influence of or using drugs in public;

"(c) Possessing any weapons: knives; clubs; concealed or loaded firearms; baseball bats; glass bottles; or any other instrument prohibited by Penal Code Section 12020;

"(d) Engaging in fighting in the public streets, alleys, and/or public and private property;

"(e) Using or possessing marker pens, spray paint cans, nails, razor blades, screwdrivers, or other sharp objects capable of defacing private or public property;

"(f) Spray painting or otherwise applying graffiti on any public or private property, including but not limited to the street, alley, residences, block walls, vehicles and/or any other real or personal property;

"(g) Trespassing on or encouraging others to trespass on any private property;

"(h) Blocking the free passage of any person or vehicle on any street, walkway, sidewalk, driveway, alleyway, or other area of public passage;

"(i) Approaching vehicles, engaging in conversation, or otherwise communicating with the occupants of any vehicle or doing anything to obstruct or delay the free flow of vehicular or pedestrian traffic;

"(j) Discharging any firearms;

"(k) In any manner confronting, intimidating, annoying, harassing, threatening, challenging, provoking, assaulting and/or battering any residents or patrons or visitors to the Target Area, or any other persons who are known to have complained about gang activities;

"(l) Causing or participating in the use, possession and/or sale of narcotics;

"(m) Owning, possessing or driving a vehicle found to have any contraband, narcotics, or illegal or deadly weapons;

"(n) Using or possessing pagers or beepers in any public place;

"(o) Possessing channel lock pliers, picks, wire cutters, dent pullers, sling shots, steel shots, spark plugs, rocks, 'slim jims,' and other devices capable of being used to break into locked vehicles;

"(p) Demanding entry into another person's residence any time of the day or night;

"(q) Hiding people who are evading a law enforcement officer;

"(r) Signaling to, whistling, or acting as a lookout for other persons to warn of the approach of police officers;

"(s) Littering in any public place or place open to public view;

"(t) Urinating or defecating in any public place open to public view;

"(u) Using words, phrases, physical gestures, or symbols, commonly known as hand signs or engaging in other forms of communication which describe or refer to the gang known as Posole;

"(v) Wearing clothing which bears the name or letters of the gang known as Posole;

"(w) Making, causing, or encouraging others to make loud noise of any kind, including, but not limited to yelling and loud music at any time of the day or night;

"(x) If under the age of eighteen (18), being in a public place between the hours of 10:00 p.m. on any day, and sunrise of the immediately following day, unless (1) accompanied by a parent or legal guardian, or by a spouse eighteen (18) years of age or older, or (2) performing an errand directed by a parent or legal guardian, or by a spouse eighteen (18) years or older,

with Mark Neenan in the front yard of 1408 Lemon Street, which is the residence of Englebrecht's grandmother. The trio walked down the street to Balderama Park.

Neenan is a documented Posole gang member, but was not named in the complaint for the preliminary injunction. Neenan, who was released on parole on February 3, 1998, had spent the past four years in prison.

Sandoval drove to the Balderama Park parking lot. As Englebrecht passed the detective's car, Sandoval warned Englebrecht that if he was with Neenan he was violating the injunction.

Later that afternoon, Detective Dwight Ayers of the Oceanside Police Department's gang unit, observed Englebrecht, Neenan and Juan Banuelos standing in front of 1408 Lemon Street. Banuelos, a documented Posole gang member, is a named defendant in the complaint for the preliminary injunction and had been served with the restraining order.

Ayers reported his viewing to Sandoval and other officers assembled by Sandoval nearby. The officers drove to Lemon Street, where Englebrecht, Neenan and Banuelos were walking away eastbound in single file. When the three men saw the officers, Neenan ran away, Englebrecht crossed the street toward Balderama Park and Banuelos continued to walk eastbound on Lemon Street. Ayers arrested Englebrecht in Balderama Park; the other two gang members also were arrested.

At the police station, officers found a pager in Englebrecht's possession.

On April 17, 1998, the trial court found Englebrecht in contempt of court for violating two provisions of the preliminary injunction: (1) associating with a known member of the Posole gang within the Target Area in violation of paragraph (a); and (2) possessing a pager within the Target Area in violation of paragraph (n). The trial court sentenced Englebrecht to concurrent five-day terms on each violation and fined him $1,000.

---

or (3) returning directly home from a public meeting, or a place of public entertainment, such as a movie, play, sporting event, dance or school, or (4) actively engaged in some business, trade, profession, or occupation which requires such presence;

"(y) If eighteen (18) years of age or older, being in a public place between midnight on any day and sunrise of the immediately following day, unless (1) going to/from a legitimate meeting or entertainment activity, or (2) actively engaged in some business, trade, profession, or occupation which requires such presence."

DISCUSSION

I. *Use of Civil Injunctions to Enjoin Public Nuisance of Gangs*

The use of civil injunctions to abate gang-related problems is a relatively new law enforcement approach that relies on the centuries-old public nuisance law. (*People* ex rel. *Gallo* v. *Acuna* (1997) 14 Cal.4th 1090, 1102-1103 [60 Cal.Rptr.2d 277, 929 P.2d 596] (*Acuna*); see generally, Yoo, *The Constitutionality of Enjoining Criminal Street Gangs as Public Nuisances* (1994) 89 Nw.U. L.Rev. 212.) Public nuisance law originated from the ancient maxim " '*sic utere tuo ut alienum non laedes*,' " which means "one must so use his rights as not to infringe on the rights of others." (*CEEED* v. *California Coastal Zone Conservation Com.* (1974) 43 Cal.App.3d 306, 318 [118 Cal.Rptr. 315].)

As early as 1872, California codified the common law definition of public nuisance in Penal Code section 370: "[a]nything which is injurious to health, or is indecent, or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property by an entire community or neighborhood . . . ." Civil Code sections 3479 and 3480, also enacted in 1872, have virtually identical definitions. The remedies against a public nuisance are (1) indictment or information, (2) civil action, or (3) abatement. (Civ. Code, § 3491.) Code of Civil Procedure section 731 authorizes district attorneys and city attorneys to seek enjoinment of public nuisances within their jurisdictions in the name of the people of the State of California.

Either criminal or noncriminal conduct may be abated, but the equitable remedy lies only "where the objectionable activity can be brought within the terms of the statutory definition of public nuisance." (*People* v. *Lim* (1941) 18 Cal.2d 872, 879 [118 P.2d 472].) A nuisance must be substantial and unreasonable to qualify as a public nuisance and be enjoinable. (*Acuna*, *supra*, 14 Cal.4th at p. 1105.)

In *Acuna*, *supra*, 14 Cal.4th 1090, the City Attorney of San Jose sought a preliminary injunction directed against specific gang members and specific activities in a four-square-block neighborhood. The trial court issued the preliminary injunction enjoining 24 activities by gang members.[4] The Court of Appeal modified the preliminary injunction, upholding only those provisions enjoining criminal conduct. The Supreme Court, at the request of the city attorney, granted review with respect to two of the provisions of the preliminary injunction.

---

[4]The preliminary injunction in the instant case virtually mirrors the *Acuna* preliminary injunction.

Those provisions enjoined defendants from:

—"[(a)] 'Standing, sitting, walking, driving, gathering or appearing any-where in public view with any other defendant . . . or with any other known "VST" (Varrio Sureno Town or Varrio Sureno Treces) or "VSL" (Varrio Sureno Locos) member'[;]

"
.    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

—"[(k)] '[C]onfronting, intimidating, annoying, harassing, threatening, challenging, provoking, assaulting and/or battering any residents or patrons, or visitors to 'Rocksprings' . . . known to have complained about gang activities.' " (*Acuna, supra,* 14 Cal.4th at pp. 1110, 1118, italics deleted.)

The high court reversed, finding, among other things, that the two provisions fell within the superior court's equitable power to abate a public nuisance and passed constitutional muster. (*Acuna, supra,* 14 Cal.4th at p. 1102.)

## II.   *Nonassociation Provision*

■   Englebrecht contends the nonassociation provision is unconstitutional because it infringes on the First Amendment right to peaceable assembly and is vague with respect to the use of "known" gang members.

In *Acuna, supra,* 14 Cal.4th at pages 1110 to 1112 and 1115 to 1118, our Supreme Court reviewed the same issues regarding the same nonassociation provision that is before us and concluded there was no constitutional infirmity.

■   With respect to association, the *Acuna* court noted there were two kinds of associations entitled to First Amendment protection: "those with an 'intrinsic' or 'intimate' value, and those that are 'instrumental' to forms of religious and political expressions and activity." (*Acuna, supra,* 14 Cal.4th at p. 1110.) The *Acuna* court went on to find the street gang did not fit into either category:

"It is evident that whatever else it may be in other contexts, the street gang's conduct in Rocksprings at issue in this case fails to qualify as either of the two protected forms of association. Manifestly, in its activities within the four-block area of Rocksprings, the gang is not an association of individuals formed *'for the purpose* of engaging in protected speech or religious activities.' [Citation.] Without minimizing the value of the gang to its members as a loosely structured, elective form of social association, that

characteristic is in itself insufficient to command constitutional protection, at least within the circumscribed area of Rocksprings. As the court pointed out in *Dallas* v. *Stanglin* [(1989)] 490 U.S. [19,] 25 [109 S.Ct. 1591, 1594, 104 L.Ed.2d 18], '[i]t is possible to find some kernel of expression in almost every activity a person undertakes—for example, walking down the street or meeting one's friends at a shopping mall—but such a kernel is not sufficient to bring the activity within the protection of the First Amendment.'

"  . . . . . . . . . . . . . . . . . . . . . . .

"Nor do the circumstances in this case implicate the other associational form worthy of First Amendment protection—personal affiliations whose characteristics include 'relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship.' [Citation.] . . .

"Freedom of association, in the sense protected by the First Amendment, 'does not extend to joining with others for the purpose of depriving third parties of their lawful rights.' [Citation.] We do not, in short, believe that the activities of the gang and its members in Rocksprings at issue here are either 'private' or 'intimate' as constitutionally defined; the fact that defendants may 'exercise *some* discrimination in choosing associates [by a] selective process of inclusion and exclusion' [citation] does not mean that the association or its activities in Rocksprings is one that commands protection under the First Amendment." (*Acuna, supra*, 14 Cal.4th at pp. 1111-1112, italics added by *Acuna* court.)

■ With respect to whether the use of "known" gang member in the nonassociation provision was impermissibly vague, the *Acuna* court pointed out that when facially vague language is read in context, it may acquire "constitutionally sufficient concreteness" and all that is required is " '*reasonable* specificity' " or " ' " '[*r*]easonable* certainty.' " ' " (*Acuna, supra*, 14 Cal.4th at pp. 1116-1117, italics added by *Acuna* court.)

■ Given these guiding principles, the *Acuna* court found, the use of "known" gang members was not void for vagueness: "We agree that in . . . a hypothetical case, the City would have to establish a defendant's *own knowledge* of his associate's gang membership to meet its burden of proving conduct in violation of the injunction. Far from being a 'classic' instance of constitutional vagueness, however, we think the element of knowledge is fairly implied in the decree. To the extent it might not be, we are confident that the trial court will . . . impose such a limiting construction on paragraph (a) by inserting a knowledge requirement should an attempt be made

to enforce that paragraph of the injunction. With that minor emendation, the text of provision (a) passes scrutiny under the vagueness doctrine." (*Acuna*, *supra*, 14 Cal.4th at pp. 1117-1118, original italics.)

Under the doctrine of stare decisis, the decision of our Supreme Court in *Acuna* is binding on us. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) "Our duty as an intermediate appellate court is to follow the decisional law laid down by the state Supreme Court." (*Beckman* v. *Mayhew* (1975) 49 Cal.App.3d 529, 535 [122 Cal.Rptr. 604]; see also *People* v. *Savala* (1981) 116 Cal.App.3d 41, 58 [171 Cal.Rptr. 882].)[5]

Englebrecht urges us to depart from *Acuna* because: (1) the Target Area here is significantly greater than the four-block area in *Acuna*; and (2) none of the defendant gang members in *Acuna* lived in the Target Area, whereas some of the defendant Posole gang members either live in the Target Area or have relatives who do.

No one disputes that the geographical area of the Target Area here is considerably larger than the Target Area in *Acuna*. However, relative size is not determinative. What matters is whether the Target Area in this case burdened "no more speech than necessary to serve a significant government interest." (*Madsen* v. *Women's Health Center, Inc.* (1994) 512 U.S. 753, 765 [114 S.Ct. 2516, 2525, 129 L.Ed.2d 593].) The Target Area encompasses "Eastside"—the turf of the Posole gang and the area that the gang has made a public nuisance. Despite its larger size, the Target Area is well defined by distinct boundaries—highways and major streets. The injunction specifically and narrowly describes the Target Area within legal requirements. There has been no showing that the Target Area is larger than it need be to abate the public nuisance. From this record, we can only conclude the size of the Target Area does not make the nonassociation provision of the preliminary injunction constitutionally infirm—even though it encompasses a much larger area than the Target Area in *Acuna*.

The fact that some of the defendants here live or have relatives in the Target Area is another distinction with *Acuna* that does not make a difference.

---

[5]With respect to the contempt finding for violating the nonassociation provision, we find there is substantial evidence that Englebrecht knew that both Banuelos and Neenan were Posole gang members, as *Acuna*, *supra*, 14 Cal.4th at pages 1117 to 1118, requires. Banuelos is one of the named defendants, along with Englebrecht, in the complaint, and Englebrecht was served with the complaint. Although Neenan was not named as a defendant in the complaint, earlier in the day, Sandoval warned Englebrecht that he was violating the injunction by being with Neenan.

Englebrecht misreads the injunction. It does not enjoin him from being in the Target Area; he is free to visit his grandmother and other relatives who reside there. What the injunction prohibits is his association with other Posole gang members within the Target Area. Here, Englebrecht's contempt is based on his walking down the street with Neenan and later with Neenan and Banuelos—both Posole gang members—not relatives. The injunction does not violate Englebrecht's constitutional right of intimate family association.

Englebrecht also misreads the law. The *Acuna* court did indeed hold that the associational rights of the gang members did not merit constitutional protection because the gang activities were neither "intimate" nor "intrinsic." However, the fact that some Posole gang members live or have relatives who live in the Target Area does not transform their gang activities into "intimate" or "intrinsic" associational activities. The gang activities remain nonintimate activities. The familial nexus of some Posole gang members to the Target Area does not bestow constitutional protection on associational gang activity, which is often criminal or terrorizing or both. The familial nexus is not carte blanche for creating a public nuisance.

In sum, the nonassociation provision of the preliminary injunction is constitutional. *Acuna* is controlling. The factual distinctions between *Acuna* and this case are of no moment.

### III. *Pager and Beeper Provision*

Englebrecht contends the provision enjoining the use and possession of pagers or beepers in the Target Area is unconstitutionally overbroad. We agree.

In today's world of instant and mobile communications, cellular telephones, pagers and beepers are almost becoming ubiquitous; they are important communication devices. In this regard, they are analogous to the telephone, which for much of the twentieth century has been an essential tool for disseminating speech. Regulation of such modes of communication must not run afoul of the First Amendment; any regulation must be narrowly tailored so that it does not proscribe a substantial amount of protected speech. "The right of free speech necessarily embodies the means used for its dissemination because the right is worthless in the absence of a meaningful method of its expression. To take the position that the right of free speech consists merely of the right to be free from censorship of the content rather than any protection of the means used, would, if carried to its logical conclusion, eliminate the right entirely. The right to speak freely must ·encompass

inherently the right to communicate." (*Wollam* v. *City of Palm Springs* (1963) 59 Cal.2d 276, 284 [29 Cal.Rptr. 1, 379 P.2d 481]; see also *Weaver* v. *Jordan* (1966) 64 Cal.2d 235, 241-242 [49 Cal.Rptr. 537, 411 P.2d 289] [". . . rights of free speech and press are worthless without an effective means of expression[;] the guaranty extends to both the content of the communication and the means employed for its dissemination"].)

Here, paragraph (n) of the preliminary injunction proscribes all uses and possessions of pagers and beepers within the Target Area, and, therefore, includes those that may have a legitimate communication or informative function as well as those that do not.

■ A statute that prohibits constitutionally protected conduct is over-broad and its enforcement may constitute a denial of due process. (*Bowland* v. *Municipal Court* (1976) 18 Cal.3d 479, 493-494 [134 Cal.Rptr. 630, 556 P.2d 1081].)

Under the overbreadth doctrine, " 'a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms.' " (*Williams* v. *Garcetti* (1993) 5 Cal.4th 561, 577 [20 Cal.Rptr.2d 341, 853 P.2d 507], quoting *NAACP* v. *Alabama* (1964) 377 U.S. 288, 307 [84 S.Ct. 1302, 1314, 12 L.Ed.2d 325].) "A law's overbreadth represents the failure of draftsmen to focus narrowly on tangible harms sought to be avoided, with the result that in some applications the law burdens activity which does not raise a sufficiently high probability of harm to governmental interests to justify the interference." (Note, *The First Amendment Overbreadth Doctrine* (1970) 83 Harv. L.Rev. 844, 887.)

A party, such as Englebrecht, is allowed to challenge a statute on its face not because his own rights of free expression are violated, but because its "very existence may cause others not before the court to refrain from constitutionally protected speech or expression." (*Broadrick* v. *Oklahoma* (1973) 413 U.S. 601, 612 [93 S.Ct. 2908, 2916, 37 L.Ed.2d 830].) "If the overbreadth is 'substantial,' the law may not be enforced against anyone, including the party before the court, until it is narrowed to reach only unprotected activity, whether by legislative action or by judicial construction or partial invalidation." (*Brockett* v. *Spokane Arcades, Inc.* (1985) 472 U.S. 491, 503 [105 S.Ct. 2794, 2802, 86 L.Ed.2d 394], fn. omitted.)

Here, the papers filed in support of the preliminary injunction do not explicitly state why the district attorney sought to enjoin the defendants from possessing and using pagers and beepers in the Target Area, although police

declarations indicate the injunction would be a tool for law enforcement and assist in the containment of the Posole gang.[6] Since Posole gang members engage in drug traffic in the Target Area, it is reasonable to infer from the declarations that the use of pagers and beepers facilitate Posole gang drug sales. It is also reasonable to infer that Posole gang members use pagers and beepers to communicate to one another the comings and goings of law enforcement in the Target Area, and that such communications aid members in eluding arrest. Although such illegal uses are not expressly documented in the record, we will assume for purposes of this proceeding, that some Posole gang members have possessed and used pagers and beepers for these purposes.

■ The problem with paragraph (n) is that pagers and beepers are not used only for illicit reasons, but have countless lawful, legitimate and everyday uses, both in the personal sense and professionally. For example, pagers and beepers are used to contact workers in the field in numerous businesses and professions, and they enable parents or family members to be readily contacted if the need arises.

These modern communicative devices are, of course, subject to government regulation. However, as long as the devices are not used for illegal purposes, any such regulations must be narrowly tailored so as not to run afoul of the First Amendment.

Because constitutionally protected communications are swept within the ambit of paragraph (n), it is overbroad and infirm. Paragraph (n), as written, goes beyond what the state can properly proscribe. Such an all-encompassing ban on pagers and beepers poses a greater burden on the defendants' right to free speech than is necessary to serve the district attorney's legitimate interest in curtailing illegal gang activity and abating the public nuisance in the Target Area, which the Posole gang has created.

Having found paragraph (n) unconstitutional, we note there was no attempt made below to create a nexus between the use of pagers and beepers and the public nuisance, which the preliminary injunction is intended to abate. There was no attempt to narrow the provision so that it enjoins the use of these devices to abet criminal activities—e.g., to facilitate drug sales or to

---

[6]Contrary to the district attorney's assertion in its supplemental briefing, the sealed declarations by community residents do not address the use of pagers and beepers by the Posole gang members.

assist fellow gang members to elude police—the type of conduct that has contributed to the public nuisance.[7]

## DISPOSITION

The trial court is directed to vacate its finding that Englebrecht was in contempt of court for possessing a pager within the Target Area. In all other respects, the petition is denied.

Work, Acting P. J., and McIntyre, J., concurred.

---

[7]Englebrecht also contends the pager and beeper provision is void for vagueness. This contention is without merit; the provision provides adequate notice of what is prohibited and does not encourage arbitrary and discriminatory enforcement.