171 Cal.App.4th 210 (2009)
THE PEOPLE, Plaintiff and Respondent,
v.
ANGELINA MARIE MURILLO, Defendant and Appellant.
No. H032409.
Court of Appeals of California, Sixth District.
February 18, 2009.
*213 Jonathan Grossman, under appointment by the Court of Appeal, for Appellant for Defendant and Appellant Angelina Marie Murillo.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Seth K. Schalit and Sharon Wooden, Deputy Attorneys General, for Plaintiff and Respondent The People.

*214 OPINION
RUSHING, P. J.

I. INTRODUCTION
In this case, we conclude that a probation condition requiring the probationer to take any and all medication prescribed by her doctor is unconstitutionally vague and overbroad.

II. STATEMENT OF THE CASE
Defendant Angelina Marie Murillo pleaded no contest to unlawful sexual intercourse with a minor. (Pen. Code, § 261.5, subd. (c).)[1] Under a plea agreement, the court dismissed a prior strike conviction allegation and placed her on probation. Among her conditions of probation, defendant was barred from possessing or consuming alcohol or being where alcohol is the major item sold. She was also required to enter and complete counseling and take any and all medication prescribed by her doctor. On appeal from the judgment, defendant challenges the alcohol-related condition and the requirement that she take prescribed medication.
(1) We agree that the medication requirement is defective, reverse the judgment, and remand the case for the court to reconsider it.

III. BACKGROUND
At 8:30 a.m. on June 23, 2007, a San Jose Police Department officer served a warrant at the residence of the 16-year-old male victim. At the time, the officer observed that defendant, who is 21 years old, and the victim were lying together under a blanket in their underwear. Defendant explained to the officer that she had been having a relationship with the victim that included sexual intercourse since August 2006. The victim and the victim's mother confirmed this fact. Defendant admitted knowing the victim's age and conceded that her conduct was wrong.
In her statement in the probation report, defendant said that after first learning the victim's age, she did not think having a sexual relationship was a "serious ... thing." However, she now regretted that she did not immediately end it when she learned his age. She explained, "I am no longer self-medicating, and I am communicating with my family more, not holding stuff inside."
*215 Concerning her self-medication, defendant admitted having an extensive history of substance abuse that began at age 12 with daily use of alcohol and marijuana. At age 14, she was using methamphetamines and LSD daily, and her use continued until recently. At age 15, she started using PCP and ecstasy. She stopped using ecstasy after an overdose. At age 19, she started using cocaine, and at age 20, she experimented with mushrooms. She reported that marijuana is her drug of choice, and she considers herself to be an alcoholic.
Defendant further explained that as a juvenile, "she used to injure herself by cutting on her arms, the last occurrence when she was 17-years-old." She also said she had been diagnosed with "ADHD [Attention Deficit Hyperactivity Disorder], Bi-Polar Disorder, and asthma. She stated she uses an inhaler for her asthma, but is not undergoing treatment or taking medication for ADHD or Bi-Polar Disorder."
Defendant said that she wanted an opportunity to show the court and her family that she can change and considered her situation a "wake-up call." Defendant had been living with her grandparents and caring for her four-year-old daughter. She said that she did not want to be like the women she saw in jail who were unable to provide for their children. Instead, she hoped to get her high school diploma, get a better job, and move into her home.
In his evaluation of the case, the probation officer observed that defendant understood that her conduct was wrong, accepted responsibility for it, and expressed remorse. He noted that defendant was trying to rid herself of drugs and was seeking help for her alcohol addiction. Under the circumstances, he recommended a minimum jail sentence, and "[b]ecause the defendant indicated a drug and alcohol history and has asked for help with her alcoholism, it is also recommended that the defendant receive the full compliment [of] substance abuse conditions."
At sentencing, defense counsel objected to three of the numerous recommended probation conditions on the ground they were not reasonably related to the offense or future criminality. One condition required chemical testing; another prohibited possession or consumption of alcohol or illegal drugs and knowingly being where illegal drugs are used or sold or alcohol is the major item of sale; and the third required defendant to enter and complete a substance abuse treatment program.
Given defendant's admitted history of drug and alcohol abuse, the court overruled the objection, explaining that the condition barred her from going *216 to "bars, clubs, liquor stores, and places like that, while you're on probation." On its own motion, the court also imposed a condition requiring that defendant "enter and complete psychological counseling as directed by probation, and take any and all medications as prescribed by your physician." After reciting the various probation conditions, the court asked defendant whether she understood and agreed to them, and she said she did.

IV. THE ALCOHOL-RELATED CONDITION
Defendant contends that the court abused its discretion in imposing the alcohol-related condition. She argues that because her crime did not involve the use of alcohol, the condition is not reasonably related to her current offense or future criminality.
Probation is governed by section 1203.1, which provides in pertinent part: "The court or judge thereof, in the order granting probation, may suspend the imposing or the execution of the sentence .... [¶] ... [¶] The court may impose and require ... reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach and generally and specifically for the reformation and rehabilitation of the probationer, and that should the probationer violate any of the terms or conditions imposed by the court in the matter, it shall have authority to modify and change any and all the terms and conditions and to reimprison the probationer in the county jail within the limitations of the penalty of the public offense involved."
(2) "A condition of probation will not be held invalid unless it `(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality....'" (People v. Lent (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545], quoting People v. Dominguez (1967) 256 Cal.App.2d 623, 627 [64 Cal.Rptr. 290].) Stated differently, "a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality." (People v. Lent, supra, 15 Cal.3d at p. 486; see People v. Carbajal (1995) 10 Cal.4th 1114, 1120 [43 Cal.Rptr.2d 681, 899 P.2d 67] [probation conditions must serve the purpose of § 1203.1].) The touchstone is whether the condition is reasonable under all of the circumstances. (People v. Welch (1993) 5 Cal.4th 228, 234 [19 Cal.Rptr.2d 520, 851 P.2d 802].) A court violates these standards *217 only "when its determination is arbitrary or capricious or `"exceeds the bounds of reason, all of the circumstances being considered."'" (Ibid.)
(3) "Insofar as a probation condition serves the statutory purpose of `reformation and rehabilitation of the probationer,' (§ 1203.1) it necessarily follows that such a condition is `reasonably related to future criminality' and thus may not be held invalid whether or not it has any `relationship to the crime of which the offender was convicted.' [Citation.]" (People v. Balestra (1999) 76 Cal.App.4th 57, 65 [90 Cal.Rptr.2d 77], quoting People v. Lent, supra, 15 Cal.3d at p. 486, italics added; accord, People v. Brewer (2001) 87 Cal.App.4th 1298, 1311 [105 Cal.Rptr.2d 293]; e.g., People v. Lopez (1998) 66 Cal.App.4th 615, 624-625 [78 Cal.Rptr.2d 66].)
For example, in People v. Smith (1983) 145 Cal.App.3d 1032 [193 Cal.Rptr. 825] (Smith), the defendant was convicted of possessing PCP and was under the influence of PCP at the time of his arrest. The probation report stated that the defendant had extensive involvement with drugs, suffered from personality problems, and was in need of "professional guidance in regards to drugs...." (Id. at p. 1034.) There was no evidence that the offense involved the use of alcohol, and the probation report did not suggest that defendant was an alcoholic. Nevertheless, in upholding an alcohol-related probation condition, the Smith court noted that "[d]rinking at any time, even for the social, controlled drinker who can stop at will, can lead to a temporary relaxation of judgment, discretion, and control.... [T]he physical effects of alcohol are not conducive to controlled behavior. [¶] ... Given the nexus between drug use and alcohol consumption, we find no abuse of discretion in the imposition of the condition of probation relating to alcohol usage." (Id. at pp. 1034-1035.)
Similarly, in People v. Lindsay (1992) 10 Cal.App.4th 1642 [13 Cal.Rptr.2d 676] (Lindsay), the defendant was convicted of selling cocaine. He said that he committed the crime to support his cocaine addiction. Although the offense did not involve the use of alcohol, the defendant had a long history of alcohol abuse and hoped that being on probation would motivate him to abstain from alcohol and cocaine. (Id. at p. 1645.) In upholding an alcohol-related probation condition, the court, citing Smith, opined that "there is a nexus between alcohol consumption and drug use. As an addict, refraining from the use of drugs will take a great deal of willpower on appellant's part. A person's exercise of judgment may be impaired by the consumption of alcohol, and in appellant's case, this could lead to his giving in to the use of drugs. By his own admission, previous sales of cocaine were made to support his addiction. Under the circumstances, it was not an abuse of discretion to impose the alcohol-use condition of probation." (Ibid.)
*218 Here, defendant admitted that she exercised poor judgment in having a sexual relationship with a minor. She also acknowledged a long history of alcohol and drug abuse, starting when she was 10 years old and continuing until just months before her offense. Moreover, she wanted to stop using drugs, considered herself an alcoholic, and sought help in combating her alcoholism.
Given this information, the court reasonably could find that although defendant's crime did not directly involve the use of alcohol, the alcohol-related condition would help her combat alcoholism and thereby facilitate rehabilitation and promote her desire and efforts to reform and become an independent person and able parent. Moreover, given defendant's alcoholism, the nexus between the use of alcohol and drugs recognized in Smith and Lindsay, and the loss of will power than can accompany the use of alcohol, the court reasonably could find that the probation condition would help ensure defendant's compliance with conditions prohibiting the use of drugs and requiring chemical testing and participation in a substance abuse treatment programconditions that defendant does not now challenge.
Under the circumstances, we conclude that the alcohol-related condition is reasonably related to defendant's rehabilitation and reformation, and therefore, the court did not abuse its discretion in imposing it.
Defendant's reliance on People v. Kiddoo (1990) 225 Cal.App.3d 922 [275 Cal.Rptr. 298], overruled on other grounds in People v. Welch, supra, 5 Cal.4th at page 237, is misplaced. There, an alcohol-related condition was stricken because the defendant's crime did not involve the use of alcohol, and there was no evidence the defendant had a history of substance abuse or alcoholism. (People v. Kiddoo, supra, 225 Cal.App.3d at pp. 924, 927-928.) Here, however, defendant had a long history of drug and alcohol abuse that rendered a restriction concerning alcohol reasonably related to her rehabilitation.[2]

V. MEDICATION REQUIREMENT
Defendant contends that the court abused its discretion in imposing a probation condition that, among other things, required her to "take any and all medications as prescribed by your physician." She claims that the medication requirement is unconstitutionally vague and overbroad.

*219 A. Forfeiture

Initially, the Attorney General and defendant duel over whether defendant's failure to object to the condition forfeited her appellate claim.
(4) In In re Sheena K. (2007) 40 Cal.4th 875, 890 [55 Cal.Rptr.3d 716, 153 P.3d 282] (Sheena K.), the Supreme Court resolved a conflict among appellate courts concerning whether the failure to raise a constitutional objection forfeits that claim on appeal. (Id. at pp. 879, 883-889.) In a word, the court's answer was sometimes. If the claim is based on alleged vagueness and overbreadth that can be corrected "without reference to the particular sentencing record developed in the trial court," the claim presents a pure question of law involving a fundamental constitutional right, and the reviewing court may properly address it even if there was no objection below. (Id. at p. 887.) In Sheena K., the minor claimed for the first time on appeal that a probation condition prohibiting association with persons disapproved of by the probation department was unconstitutionally vague and overbroad because it did not require knowledge of who was disapproved. (Id. at p. 878.) The appellate court not only addressed the issue but also agreed with the claim and then cured the constitutional defect. In affirming the judgment, the California Supreme Court opined that to resolve the minor's claim, the appellate court did not have to review the facts and circumstances underlying the condition but needed only to consider abstract and generalized legal conceptsa task for which the reviewing court is well suited. (Id. at p. 885.) Moreover, the court observed that "[c]onsideration and possible modification of a challenged condition of probation, undertaken by the appellate court, may save the time and government resources that otherwise would be expended in attempting to enforce a condition that is invalid as a matter of law." (Id. at p. 885.)
Unlike the defect in Sheena K., the alleged defects in the medication requirement cannot be determined or potentially corrected based on abstract and generalized legal principles and without reference to the particular facts and circumstances of this case. For example, defendant's claim that the requirement is vague is not based solely on its wording, which simply and clearly commands that defendant take any and all medication prescribed by the doctor. Rather, her claim is based on alleged ambiguity concerning the scope of the requirement, which becomes apparent only in light of the particular facts and circumstances.
However, although Sheena K. suggests that an objection was necessary to preserve defendant's claim for appeal, we nevertheless reach the merits claim *220 in addressing her concomitant and alternative claim that counsel's failure to object constituted ineffective assistance of counsel.[3]

B. Ineffective Assistance

(5) To obtain reversal due to ineffective assistance, a defendant must first show "that defense counsel's performance fell below an objective standard of reasonableness, i.e., that counsel's performance did not meet the standard to be expected of a reasonably competent attorney." (People v. Cunningham (2001) 25 Cal.4th 926, 1003 [108 Cal.Rptr.2d 291, 25 P.3d 519]; see Strickland v. Washington (1984) 466 U.S. 668, 688 [80 L.Ed.2d 674, 104 S.Ct. 2052].) Where the record on direct appeal "does not show the reason for counsel's challenged actions or omissions, the conviction must be affirmed unless there could be no satisfactory explanation." (People v. Anderson (2001) 25 Cal.4th 543, 596 [106 Cal.Rptr.2d 575, 22 P.3d 347].) Because the defendant bears this burden, "[a] reviewing court will indulge in a presumption that counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." (People v. Carter (2003) 30 Cal.4th 1166, 1211 [135 Cal.Rptr.2d 553, 70 P.3d 981].)
Second, a defendant must show that there is "a reasonable probability that defendant would have obtained a more favorable result absent counsel's shortcomings." (People v. Cunningham, supra, 25 Cal.4th at p. 1003.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Strickland v. Washington, supra, 466 U.S. at p. 694; see People v. Staten (2000) 24 Cal.4th 434, 450-451 [101 Cal.Rptr.2d 213, 11 P.3d 968].)
The record does not reveal why defense counsel declined to object, and therefore, we must determine whether counsel's omission could have been a sound tactical choice. Thus, we analyze whether the medication requirement is unconstitutionally vague and overbroad.

1. Vagueness

(6) "[T]he underpinning of a vagueness challenge is the due process concept of `fair warning.'" (Sheena K., supra, 40 Cal.4th at p. 890.) "The *221 vagueness doctrine bars enforcement of `"a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." [Citations.]' [Citation.]" (Ibid.) Thus, vagueness prevents people from knowing what is expected and what to enforce. "In deciding the adequacy of any notice afforded those bound by a legal restriction, we are guided by the principles that `abstract legal commands must be applied in a specific context,' and that, although not admitting of `mathematical certainty,' the language used must have `"reasonable specificity."' [Citation.]" (Ibid., some italics added.)
As noted, in Sheena K., supra, 40 Cal.4th 875, the court held that a probation condition prohibiting association with anyone disapproved of by probation was unconstitutionally vague because it did not require that the minor know whether a person had been disapproved. (Id. at pp. 890-891.)
Here, the probation condition requires that defendant complete counseling and take any and all medication prescribed by her doctor. Concerning the basis for the counseling requirement, the probation report reveals that in her past, defendant had engaged in acts of self-mutilation. She also had a long and ongoing history of substance and alcohol abuse. According to defendant, she was once diagnosed with ADHD (attention deficit hyperactivity disorder) or bipolar disorder but never took any medication for it. Defendant further reported that since her arrest, communication with her family was improving because she was not "holding stuff inside." Defendant also indicated that she wanted help combating alcoholism, and she sought to become a more independent person and responsible parent.
The counseling requirement is reasonably designed to address possible psychological and emotional issues underlying defendant's prior self-abuse, substance abuse, and alcoholism; help defendant deal with addictive behavior related to drugs and alcohol; and support defendant's desire for growth and self-improvement. In other words, defendant's rehabilitative needs reasonably included mental health counseling.
Concerning the medication requirement, the probation report noted that defendant used an inhaler for her asthma. Defendant also reported a prior diagnosis for a mental disorderADHD or bipolar disorderfor which she had never taken medication.
Defendant claims that the medication requirement is unconstitutionally vague because it is ambiguous concerning whether it broadly applies to all prescribed medication or narrowly to medication prescribed for a more limited purpose: mental health problems.
*222 (7) On its face, the language of the requirement is clear and unambiguous. It would compel one to take medication prescribed for any possible medical condition. However, otherwise clear language can become ambiguous in the context in which it is used. (E.g., American Alternative Ins. Corp. v. Superior Court (2006) 135 Cal.App.4th 1239, 1246 [37 Cal.Rptr.3d 918] [language of insurance policy contract]; Quarterman v. Kefauver (1997) 55 Cal.App.4th 1366, 1371 [64 Cal.Rptr.2d 741] [statutory language].)
Here, we agree with defendant that one could wonder whether the medication requirement was intended to have the broad, expansive scope indicated by its language. We note that there is no evidence that defendant had ever resisted, declined, or forgotten to take prescribed medication. Nor is there evidence that she was likely to have any particular disorder, condition, or problem for which medication would be appropriate and would likely be prescribed. Thus, insofar as the medication requirement would compel defendant to take medication for toenail fungus, acne, high cholesterol, allergies, or birth control, it would seem to lack any reasonable relationship to the circumstances surrounding defendant's offense or her rehabilitative needs.
On the other hand, given the purpose of the counseling requirement, the presence of both the counseling and medication requirements in the same probation condition, and defendant's statement that she had never taken medication for a diagnosed mental disorder, one reasonably could think that the medication requirement, like the counseling requirement, was intended to address mental health issues and was, therefore, limited to medication prescribed to address mental disorders, conditions, and problems related to defendant's self-abusive conduct, drug use, and alcoholism. Indeed, unlike a broad interpretation of the requirement, such a limited requirement would share the same general goal as counseling and thus arguably be reasonably related to defendant's rehabilitation.
Under the circumstances, we find that, just as the absence of a knowledge requirement made it difficult for the minor in Sheena K. to know with reasonable certainty whether associating with a particular person constituted a probation violation, so too the language of the medication requirement and its context make it difficult to know with reasonable certainty whether defendant risked a probation violation if, for example, she failed to take prescribed allergy medication; or whether she was at risk only if she declined to take medication prescribed to address mental health problems. Moreover, for the same reasons, defendant's probation officer and the court would not know with certainty what constituted a probation violation and thus whether to take action against her. This is additionally so because it is not clear whether defendant would violate probation if she declined to take medication that her doctor prescribed but gave her the option to take.
*223 In sum, therefore, we find the medication requirement to be unconstitutionally vague.

2. Overbreadth

(8) The overbreadth doctrine focuses on concerns that are related to vagueness. Under this doctrine, "`"a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms."' [Citations.]" (In re Englebrecht (1998) 67 Cal.App.4th 486, 497 [79 Cal.Rptr.2d 89].) Thus, a probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition and be reasonably necessary to achieve that purpose to avoid being invalidated as unconstitutionally overbroad. (Sheena K., supra, 40 Cal.4th at p. 890.) "`"To the extent [a probation condition] is overbroad it is not reasonably related to a compelling state interest in reformation and rehabilitation and is an unconstitutional restriction on the exercise of fundamental constitutional rights."'" (People v. Garcia (1993) 19 Cal.App.4th 97, 102 [23 Cal.Rptr.2d 340].)
(9) The medication requirement implicates defendant's right of privacy under the California Constitution, which broadly "`guarantees to [a competent] individual the freedom to choose to reject, or refuse to consent to, intrusions of his bodily integrity,'" and encompasses the right to refuse unwanted medication. (In re Qawi (2004) 32 Cal.4th 1, 14 [7 Cal.Rptr.3d 780, 81 P.3d 224], quoting Conservatorship of Wendland (2001) 26 Cal.4th 519, 531-532 [110 Cal.Rptr.2d 412, 28 P.3d 151]; see Keyhea v. Rushen (1986) 178 Cal.App.3d 526, 540 [223 Cal.Rptr. 746]; Cal. Const., art. I, § 1.)[4]
As discussed above, the counseling requirement is reasonably related to defendant's rehabilitation, which encompasses a need to address possible psychological, emotional, and behavioral issues related to her offense, substance abuse, and alcoholism. Moreover, insofar as a counseling requirement may implicate her state constitutional right to privacy, it is sufficiently tailored to defendant's mental health needs; and, given the evidence, it is reasonably necessary to address those needs. Defendant does not suggest otherwise or argue that this part of the probation condition is overbroad.
The medication requirement, however, is another matter. Because it requires that defendant take "any and all" prescribed medication, it compels her *224 to waive her constitutional right to decline unwanted medication even if she has serious qualms due to its side-effects or differing medical opinions concerning its propriety. On its face, the medication requirement compels her to take medication prescribed for any purpose and is not narrowly tailored to an identifiable medical problem related to her offense or rehabilitation for which medication might be appropriate and necessary. Indeed, the court did not find that defendant suffers from a particular medical disorder, condition, or problem requiring medication, and the record contains no professional medical evidence to support such a finding. Moreover, although defendant reported a prior diagnosis of ADHD or bipolar disorder, there is no medical evidence confirming that diagnosis; indicating that defendant continues to suffer from such disorders; or suggesting that because such disorders could interfere with her rehabilitation, she needs to take medication to control them.
Not only is the medication requirement not narrowly tailored, but also the record does not support a finding that the broad infringement of defendant's constitutional right is reasonably necessary to achieve some medical purpose related to defendant's offense or rehabilitative needs. There is no evidence that some medical disorder, condition, or problem caused or substantially contributed to defendant's offense or that she would not have committed it had she been on medication. There is no evidence that defendant currently poses a risk of harm to herself or others or is at risk of some grave illness if she does not take medication. There is no evidence that defendant's rehabilitation could be impaired or complicated unless she takes medication for some condition, disorder, or problem. And there is no evidence that defendant has ever resisted, declined, or forgotten to take medication.
In short, without any medically informed basis for doing so, the court ordered defendant, under the threat of incarceration, to take any and all medication that her doctor might prescribe for any purpose whatsoever. That command unreasonably and unnecessarily infringes on defendant's constitutional right of privacy and is therefore patently overbroad and unconstitutional.
With our analyses of vagueness and overbreadth in mind, we return to defendant's claim of ineffective assistance.

3. Failure to Object and Prejudice

In response to defendant's claim, the Attorney General offers only a sentence and summarily asserts that "counsel had no duty to raise a fruitless constitutional challenge to a valid probation condition." However, as our *225 analyses reveals, the medication requirement is vague and overbroad, and thus a constitutional challenge would not have been fruitless. Moreover, we can think of no sound tactical reason that would justify counsel's failure to object. Thus, we find that counsel's omission fell below an objective standard of reasonableness.
Concerning prejudice, we find that if counsel had objected, the trial court would have had only two options: delete the medication requirement or modify it to cure its defects. In other words, the record establishes prejudice because each option represents a result more favorable than the existing probation condition.
The question now becomes what is the appropriate disposition.
As written, the medication requirement cannot stand. Moreover, given the paucity of competent medical evidence concerning defendant's physical and mental condition, we cannot simply cure the constitutional defects by narrowing the probation condition to medication prescribed for a particular disorder, condition, or problem.
(10) On the other hand, we decline to simply strike the requirement and affirm the judgment as modified. The Legislature has given trial courts the authority and broad discretion to make sentencing decisions, including whether to place a defendant on probation and if so, what the conditions of probation should be. (People v. Lent, supra, 15 Cal.3d at p. 486.) Here, the trial court considered it necessary to impose a medication requirement. Moreover, defendant's report concerning a previous diagnosis of ADHD or bipolar disorders, for which she did not take medication, could provide a basis for further inquiry concerning the need for a narrowly focused medication requirement. (E.g., In re S.J. (2008) 167 Cal.App.4th 953, 957 [84 Cal.Rptr.3d 557] [mother needed to take several medications to stabilize bipolar disorder]; People v. Marchman (2006) 145 Cal.App.4th 79, 84 [51 Cal.Rptr.3d 369] [defendant taking medication for bipolar disorder]; People v. Galindo (2006) 142 Cal.App.4th 531, 539 [48 Cal.Rptr.3d 241] [same]; In re David H. (2008) 165 Cal.App.4th 1626, 1645 [82 Cal.Rptr.3d 81] [minor prescribed medications for ADHD, which improved his behavior]; In re Anthony C. (2006) 138 Cal.App.4th 1493, 1502 [42 Cal.Rptr.3d 370] [same].)
Under the circumstances, we consider it appropriate to preserve the trial court's sentencing prerogative in this case and remand the matter for it to *226 reconsider the imposition of a medication requirement that can pass constitutional muster.[5] (See, e.g., Carter v. Superior Court (2006) 141 Cal.App.4th 992 [46 Cal.Rptr.3d 507] (Carter) [striking medication order due to lack of appropriate findings].)
For guidance, we discuss an additional constitutional consideration.

4. The Protected Liberty Interest

On remand, the trial court must also be mindful that, in addition to the state constitutional right to decline unwanted medication, defendant has a protected liberty interest under the due process clause of the Fourteenth Amendment in avoiding the forced administration of psychotropic or antipsychotic drugs. (Washington v. Harper (1990) 494 U.S. 210, 221-222 [108 L.Ed.2d 178, 110 S.Ct. 1028]; Riggins v. Nevada (1992) 504 U.S. 127, 133-134 [118 L.Ed.2d 479, 112 S.Ct. 1810]; Sell v. United States (2003) 539 U.S. 166, 180-183 [156 L.Ed.2d 197, 123 S.Ct. 2174].)
For example, in Washington v. Harper, supra, 494 U.S. 210, the court held that the state could not forcibly administer such drugs to a prison inmate unless he or she was dangerous to himself or others and the treatment was in the inmate's medical interest. (Id. at pp. 221-222, 227.) In Sell v. United States, supra, 539 U.S. 166, the court held that to justify the forcible administration of such drugs to render a defendant competent for trial, the court had to find that (1) an important governmental interest is at stake; (2) involuntary medication will significantly further the concomitant state interest of timely prosecution and a fair trial; (3) involuntary medication is necessary to further those interests; and (4) the administration of drugs is medically appropriate. (Id. at pp. 180-183; see Riggins v. Nevada, supra, 504 U.S. 127, 135 [forcible administration requires "a finding of overriding justification and a determination of medical appropriateness"].)
In U.S. v. Williams (9th Cir. 2004) 356 F.3d 1045 (Williams), the court addressed the propriety of a probation condition that required the defendant to take any psychotropic medication prescribed by his doctor. (Id. at pp. 1047, 1049 & fn. 3.) The court found that the underlying threat of incarceration rendered the condition sufficiently coercive to implicate the probationer's protected liberty interest. (Williams, supra, 356 F.3d at pp. 1053-1055 & *227 fn. 10.) The court further found that although that interest can properly be curtailed in a probation condition, the condition must comport with the limitations on forcible administration of drugs in other contexts and be narrowly drawn so that there is no greater deprivation of liberty than is reasonably necessary to serve the goals of probation. (Id. at pp. 1052, 1055; 18 U.S.C. § 3553(d)(2) [requirements of valid probation conditions].) Accordingly, the court held that to be valid, a condition covering psychotropic drugs required express findings based on a medically informed record that the condition is both appropriate and reasonably necessary. (Williams, supra, 356 F.3d at p. 1056; see U.S. v. Weber (9th Cir. 2006) 451 F.3d 552 [applying Williams to require findings to support involuntary penile plethysmograph testing]; U.S. v. Cope (9th Cir. 2008) 527 F.3d 944 [in absence of appropriate findings, probation condition to take any drugs does not apply to psychotropic drugs]; Carter, supra, 141 Cal.App.4th 992, 1000 [applying Williams to require express findings based on medically informed record].)
Although we are not bound by federal appellate cases, we consider Williams persuasive authority concerning the need for express findings supported by medically informed record when the court imposes a medication requirement that encompasses psychotropic or antipsychotic drugs. (See People v. Bradley (1969) 1 Cal.3d 80, 86 [81 Cal.Rptr. 457, 460 P.2d 129] [federal decisions persuasive and entitled to weight].) This is especially so because the state limitations on probation conditions that curtail constitutional rights are consistent with the federal requirements on probation conditions. Under both, the medication requirement must be narrowly drawn and involve no greater constitutional infringement than is reasonably necessary to achieve the purposes of probation.
(11) Thus, if the court on remand exercises its discretion to impose a medication requirement, that requirement must provide adequate notice concerning what is expected and what to enforce. It must be narrowly tailored and reasonably necessary to address an identifiable disorder, condition, or problem (1) that defendant is currently suffering from; (2) that is reasonably related to her offense, future criminality, rehabilitation or reformation; and (3) for which medication is an appropriate. Finally, if the medication requirement encompasses psychotropic or antipsychotic medication, the court must make express findings that the requirement is both medically appropriate and reasonably necessary, and those findings must be supported by a medically informed record.[6]

*228 VI. DISPOSITION
The judgment is reversed. The matter is remanded to the trial court for reconsideration of whether to impose a medication requirement as a condition of probation.
Premo, J., and Elia, J., concurred.
NOTES
[1] All further unspecified statutory references are to the Penal Code.
[2] For similar reasons, we reject defendant's reliance on federal cases prohibiting alcohol-related probation conditions where there is no evidence that the crime involved the use of alcohol or that the defendant had a history of alcohol abuse. (E.g., U.S. v. Betts (9th Cir. 2007) 511 F.3d 872; U.S. v. Modena (6th Cir. 2002) 302 F.3d 626, 636; U.S. v. Prendergast (8th Cir. 1992) 979 F.2d 1289.)
[3] Defendant also claims that her failure to object should be excused because she had no meaningful opportunity to do so at sentencing. (People v. Scott (1994) 9 Cal.4th 331, 356 [36 Cal.Rptr.2d 627, 885 P.2d 1040].) We disagree. After imposing the condition, the court asked defendant whether she understood and agreed with it. At that time, defendant or defense counsel could have objected. (See, e.g., People v. Gonzalez (2003) 31 Cal.4th 745, 754-755 [3 Cal.Rptr.3d 676, 74 P.3d 771].)
[4] Article I, section 1 of the California Constitution provides, "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."
[5] We express no opinion concerning whether or not the court should conduct further inquiry or whether or not a medication requirement would be medically appropriate or reasonably necessary.
[6] Welfare and Institutions Code section 5008, subdivision (l) broadly defines antipsychotic medication to "any medication customarily prescribed for the treatment of symptoms of psychoses and other severe mental and emotional disorders."